In re G. Grimsley GRAHAM.

Middleton P. RAY, Trustee, Plaintiff,

v.

G. Grimsley GRAHAM, Defendant.

Middleton P. RAY, Trustee, Plaintiff,

v.

Barbara H. GRAHAM, Defendant.

Bankruptcy No. LR 88–778.
Adv. Nos. 88–431, 88–435.

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

March 6, 1990.

Middleton P. Ray, Little Rock, Ark., trustee.

Richard Crockett, Little Rock, Ark., for trustee.

James Glover, Little Rock, Ark., for debtor.

William Waddell, Little Rock, Ark., for Barbara Graham.

ORDER DISMISSING TRUSTEE'S COMPLAINTS AGAINST G. GRIMSLEY GRAHAM AND BARBARA GRAHAM

MARY D. SCOTT, Bankruptcy Judge.

On November 1, 1988 the Chapter 7 Trustee, Middleton P. Ray, filed a Complaint objecting to the debtor's discharge in Adversary Proceeding 88–431. He also filed a separate Complaint in Adversary Proceeding No. 88–435 against the debtor's spouse, Barbara Graham, who is not a co-

debtor.[1] These two adversary proceedings, at the request of the parties, were consolidated for trial purposes only. Trial commenced January 29, 1990. The Trustee appeared personally and by counsel, C. Richard Crockett, Esq. The debtor appeared personally and by counsel, James Glover, Esq. and Isaac Scott, Esq. Barbara Graham appeared personally and by counsel, William Waddell, Esq.

This Court has jurisdiction to hear these matters pursuant to 28 U.S.C. § 1334. Moreover, the Court finds that they are "core proceedings" within the meaning of 28 U.S.C. § 157(b)(2)(A), (E) and (J) and may enter a final order.

The Trustee's Complaint against the debtor contained 148 paragraphs which were subdivided into general allegations and five counts which appeared as follows:

*Count I* (Paragraphs 132–133) asserting the debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2)(A) and (B);

*Count II* (Paragraphs 134–137) asserting the debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(3);

*Count III* (Paragraphs 138–143) asserting the debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(4)(A);

*Count IV* (Paragraphs 144–146) asserting the debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(4)(D); and

*Count V* (Paragraphs 147–148) asserting the debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(5).

The Trustee's second Amended and Restated Complaint against Barbara Graham contained 31 paragraphs which were subdivided into general allegations and five counts which appeared as follows:

*Count I* (Paragraphs 9–11) asserting that certain property known as Lot 1, Harbor East Subdivision, Montgomery County, Arkansas, was transferred to Barbara Graham and that the transfer should be ineffective as against the trustee;

*Count II* (Paragraphs 12–16) asserting that the debtor within one year preceding the filing of his bankruptcy petition transferred property to Barbara Graham which should be returned to the estate;

*Count III* (Paragraphs 17–21) asserting that the estate is entitled to an accounting from B.G. Partnership as well as one-half of the rentals received from assets of the partnership;

*Count IV* (Paragraphs 22–25) asserting that the bankruptcy estate is entitled to a judgment declaring a constructive trust on all or substantially all of the property held in the separate name of Barbara Graham; and

*Count V* (Paragraphs 26–31) asserting that the estate is entitled to sell certain property owned by the debtor and Barbara Graham as tenants by the entireties.

The Trustee, in his pre-trial materials submitted pursuant to the Court's Pre-trial Order, listed 21 witnesses and 98 exhibits. By agreement of the parties, these exhibits (except numbers 25, 26, and 27) as well as exhibits of both Defendants were introduced and received by the Court at the beginning of trial. The Court received these exhibits subject to any arguments related to relevancy which might be raised during trial. Also by agreement of the parties, six witnesses listed by the Trustee who represented banking institutions as custodians of records were excused. In addition, pursuant to pre-trial motions, two additional witnesses on the Trustee's list were omitted and another witness's testimony limited. At a hearing on these motions the Trustee withdrew the name of John Toney as a witness. The Court also found that any testimony by Dennis Devine, a CPA, would be limited to his testimony in his pre-trial depositions. Finally, the Court granted a Motion to Quash a subpoena to appear as a witness in this trial, which the Trustee served on the debtor's attorney, James Glover, Esq.

---

**1.** Barbara Graham filed a Counterclaim against the Trustee which was litigated after the Court orally ruled on the Defendants' Motions to Dismiss the Trustee's Complaints. A separate order will be entered in separate Adversary Proceeding No. 88–435 which contains the Court's findings denying her Counterclaim.

At trial, during the Trustee's case-in-chief, he called only three of the witnesses remaining on his list. Two of these witnesses, Warren Baldwin and Alan Duncan, were called for only brief testimony. The Trustee's case consisted of essentially his own testimony which was primarily a review of many, but not all, of his own exhibits. The Trustee did not dismiss any of the Counts prior to trial and thus presumably proceeded to trial on all Counts against both parties. The Trustee's presentation of evidence did not follow any recognizable sequence or track the allegations in his Complaints. Rather he testified about various of the exhibits during a random and generally muddled presentation which revealed a startling unfamiliarity with his own documents.

At the conclusion of the Trustee's case, Defendants G. Grimsley Graham and Barbara Graham moved for dismissal of the Complaints. The Defendants argued that the Trustee had not met his burden of proof with regard to any of his allegations. The Trustee argued that he had, at the least, made a *prima facie* case based on his testimony as well as all his exhibits. He further argued that, although he did not testify regarding all of his exhibits, they were all in the record and should be considered as additional proof that he had established his case.

The Court finds that the Trustee's Complaint against the debtor should be dismissed for the following reasons:

 The discharge in bankruptcy is the foremost remedy to effectuate the "fresh start" which is the goal of bankruptcy relief to the debtor. H.R.Rep. No. 595, 95th Cong. 1st Sess. 384 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. Consequently, the provisions for objection to discharge under 11 U.S.C. § 727 must be construed strictly not only in favor of the debtor, but also against the objecting creditor. *In re Johnson,* 80 B.R. 953 (Bkrtcy.D. Minn.1987) In considering any objection to discharge under 11 U.S.C. § 727, the Court· must analyze the proceeding by determining whether the Plaintiff has proven all of the required statutory elements. The bur-

den is on the petitioning party to prove all the elements. Rule 4005 of the Rules of Bankruptcy Procedure.

 Plaintiff initially alleges that the debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2)(A) and (B). In order to prevail on this objection the Trustee must establish the following elements of proof:

1. A transfer of property has occurred, made by the debtor or made at his direction;

2. The transfer involved property of the debtor;

3. The transfer was made within one year of the commencement of the bankruptcy case and/or after the date of the filing of the petition; *and*

4. The debtor had, contemporaneously with the transfer, intent to hinder, delay or defraud a creditor.

Particularly relevant to this Court's finding that the Complaint should be dismissed is the element of intent to deceive, which involves a two-part inquiry. First, debtor's actual intent must be found as a matter of fact from the evidence presented. Often the objecting party must rely on a combination of circumstances which may suggest in their entirety that the debtor harbored the necessary intent. The court may then draw an inference from this evidence. *In re Van Horne,* 823 F.2d 1285, 1287 (8th Cir.1987); · *In re Schmit,* 71 B.R. 587 (Bkrtcy.D.Minn.1987).

The second part of the inquiry involves a determination, as a matter of law, whether the debtor's demonstrated intent constitutes the intent proscribed by the statute; i.e., does such intent constitute the intent which Congress considered so abusive as to merit denial of discharge. A showing of constructive intent is not sufficient. *Lovell v. Mixon,* 719 F.2d 1373, 1376–77 (8th Cir. 1983).

 The Court finds that the Trustee did not sustain his burden with regard to this element of proof. Not only was there no evidence that the debtor actually intended to hinder, delay or defraud a creditor, but such intent could not be inferred from the

**806**

evidence presented. Each of the four elements must be proved by clear and convincing evidence. Because there was a failure of proof with regard to the debtor's intent, a recitation of the other elements and whether sufficient proof was presented with regard to each one is unnecessary.

■ Plaintiff also alleges that the debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(3). He contends that the debtor, without justification, failed to keep and preserve recorded information from which the debtor's financial condition or business transactions might be ascertained. Under this subsection of the Bankruptcy Code, the debtor is required "to take such steps as ordinary fair dealing and common caution dictate to enable the creditors to learn what he did with his estate." *Koufman v. Sheinwald,* 83 F.2d 977 (1st Cir. 1936). There is no intent requirement under this subsection, but only a reasonableness requirement.

■ This section does not dictate a rigid standard of perfection in keeping records or making business accounts. It simply requires that the debtor present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past. Each case rests of necessity on its own facts, and upon consideration of the debtor's occupation and/or business and the reasonable requirement of book and record keeping in that particular field.

■ The evidence in this case of a failure to keep records for certain years was tenuous at best. The Trustee's proof consisted of a set of documents labeled journals and ledgers which omitted one or two years. Neither the origin of these documents nor the existence of records for the alleged missing years was ever clearly established. The Trustee conceded that the debtor turned over to him voluminous personal and business records including all tax returns which more than filled in the "gaps" of the alleged missing years from the questionable records.

The Bankruptcy Code requires that there should be written evidence, orderly made and preserved, from which the present and past financial condition of the debtor may be ascertained with substantial accuracy. The burden of proof to show that the debtor failed to keep such adequate records is on the objecting creditor. The Trustee failed to meet this burden.

■ Plaintiff further alleges that the debtor's discharge should be denied pursuant to section 727(a)(4). The debtor has an affirmative duty to list all assets and fully answer the questions in the petition, and he does so under oath. *In re Morris,* 58 B.R. 422 (Bkrtcy.N.D.Tex.1986). Hence, an omission from the schedules may qualify as a false oath.

■ Bankruptcy courts, however, have not imposed strict liability under section 727(a)(4) for omissions from schedules. *In re MacDonald,* 50 B.R. 255, 259 (Bkrtcy. D.Mass.1985). Discharge will not be denied under section 727(a)(4) unless the false statement relates to a material matter. *Chalik v. Moorefield,* 748 F.2d 616 (11th Cir.1984). Moreover an amendment to the schedules does not necessarily expunge the falsity of an oath. *In re Cline,* 48 B.R. 581, 585 (Bkrtcy.Tenn.1985). Likewise, while a false answer is not cured by subsequent testimony during bankruptcy administration, a subsequent voluntary disclosure may be considered as some evidence of innocent intent. *In re Glickman,* 64 B.R. 616, 618 (Bkrtcy.S.D.Fla.1986) citing, *In re Tabibian,* 289 F.2d 793, 797 (2d Cir. 1961). See, also *In re Montgomery,* 86 B.R. 948, 957 (Bkrtcy.N.D.Ind.1988). The Trustee should not have to go to great lengths to uncover assets and transactions the debtor failed to disclose. *In re Topping,* 84 B.R. 840, 843 (Bkrtcy.M.D.Fla. 1988).

■ The evidence presented by the Trustee revealed that throughout the course of the administration of this case, the debtor did not engage in the kind of ◂conduct which is inconsistent with fair and honest disclosure and would result in forfeiture of his right to receive a discharge. In fact, evidence revealed that the debtor,

his attorneys and/or his accountant initiated all disclosures to the Trustee and in some cases had to insist that the Trustee accept additional information. The Trustee admitted that he did not discover any undisclosed asset or transaction of the debtor by his own investigative efforts.

For the Trustee to prevail under section 727(a)(4), given the proof he presented, the court would have to apply a strict liability test and conclude that the schedules filed by the debtor must be absolutely error free in the first instance. The Court does not reach this conclusion. The Trustee utilizes the very information voluntarily disclosed by the debtor during the complicated administration of this case as his "proof" that the debtor gave a false oath when he signed his schedules and testified at the first meeting of creditors. The Trustee's interpretation of the bankruptcy process is skewed. The incentive for a debtor to disclose all transfers, attempted transfers, unlisted assets and any other relevant information should be and is an ongoing obligation.

The Trustee's position also ignores the strict requirement of section 727(a)(4) that the debtor's actions not only be knowing but also fraudulent. The debtor's consistent cooperation with the Trustee as well as his voluntary disclosures reveal conduct inconsistent with the strict requirements necessary for fraud to lie. This is not a case of a debtor reluctantly relinquishing information only when "caught." Again the Trustee has failed to meet his burden of proof.

■ The Trustee also alleged under section 727(a)(4)(D) that the debtor knowingly and fraudulently withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records and papers, relating to the debtor's property or financial affairs. The Trustee's proof was again slight to nonexistent, and he has not met his burden of proof. What evidence there was revealed that any records unavailable to the Trustee either were unavailable due to the actions of another or were records which the debtor neither kept nor prepared.

In fact, the evidence revealed that Patrick Boyd, a debtor in another bankruptcy proceeding who operated business ventures on the debtor's behalf as well as his own, was the one who was unable to produce records. The Trustee, according to his own testimony, spent considerable time attempting to establish a claim by this bankruptcy estate against the Patrick Boyd estate. He testified that he was unable to do so because Boyd's records were in such disarray and/or missing.

■ Finally, the Trustee alleged that the debtor's discharge should be denied pursuant to section 727(a)(5) because he failed to explain satisfactorily before determination of denial of discharge any loss of assets or deficiency of assets to meet the debtor's liabilities. The Trustee's proof that substantial assets once existed but now are lost or devalued consisted primarily of a presentation of the differences between the debtor's bankruptcy schedules and a "financial statement" which was titled in the debtor's name. He contends the debtor has not satisfactorily explained the deficiency of assets which is apparent from the two exhibits.

At first glance this allegation might arguably have some merit, but testimony presented during the Trustee's case revealed that the accountant who compiled the financial statement never talked to the debtor, and his compilation came about as a result of unreliable second hand or hearsay information. The accountant, during his brief testimony, stated that the document was being prepared in an effort to help the debtor effect a workout and avoid bankruptcy. He considered the statement to be merely a very preliminary draft. The listing of assets had not been audited and had not been approved by the debtor. He had no idea whether the assets listed on the financial statement were accurate or whether all belonged to the debtor. Under the limited facts and circumstances presented, the Court must conclude the Trustee has again failed to sustain his burden of proof.

The Court also finds that Trustee's Complaint against Barbara Graham is dismissed for the following reasons:

During the Trustee's case-in-chief, his primary contention against Barbara Graham, although not asserted with any real clarity, appeared to be his allegation that the real and personal property Barbara Graham claims as solely her own should be impressed with a constructive trust for the benefit of the debtor's estate. His other allegations were supported by so little proof or reference to Bankruptcy Code sections that, suffice it to say, he failed to sustain his burden of proof. Furthermore, the Trustee testified that he had already received an accounting with regard to B.G. Partnership.

■ Section 541(a)(1) of the Bankruptcy Code provides that the bankruptcy estate is comprised of all legal or equitable interests of the debtor as of the date the case is filed. The nature and extent of the debtor's interest in property are determined by state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).

■ A constructive trust is an equitable remedy imposed under circumstances where it would be unfair for the owner of certain property to enjoy the beneficial interest and would result in unjust enrichment. According to Arkansas law a constructive trust "is an implied trust that arises whenever it appears from the accompanying facts and circumstances that the beneficial interest should not go with the legal title." *Horton v. Koner*, 12 Ark.App. 38, 671 S.W.2d 235, 238 (1984), *In re N.S. Garrott & Sons*, 772 F.2d 462 (8th Cir. 1985).

■ The burden of proof is on the party attempting to establish the existence of a trust. See *Nelson v. Wood*, 199 Ark. 1019, 137 S.W.2d 929 (1949) wherein the Arkansas Supreme Court stated:

The general rule, as well as the established rule in this state, seems to be well settled that in order for one to establish by parol either a resulting or constructive trust, the evidence must be "full, clear and convincing," "full, clear and conclusive," "of so positive a character as to leave no doubt of the fact," and "of such clearness and certainty of purpose as to leave no well founded doubt upon the subject." These requirements run through a long line of cases from this court.

These long standing requirements were restated by the Arkansas Court of Appeals in *Waller v. Waller*, 15 Ark.App. 336, 693 S.W.2d 61 (1985) wherein the court at 63 cited previous 1981 opinion in *Andres v. Andres*, 1 Ark.App. 75, 613 S.W.2d 404 (1981) holding:

Constructive trusts are said to arise and be imposed in favor of persons entitled to a beneficial interest against one who has secured legal title either by an intentional false oath or promise to hold title for a specified purpose, and having thus obtained title, claims the property as his own, or who violates a confidential or fiduciary duty or is guilty of any other unconscionable conduct which amounts to constructive fraud. [citations omitted]. A constructive trust is an implied trust that arises whenever it appears from the accompanying facts and circumstances that the beneficial interest should not go with the legal title.

The Court is not going to spend much time or effort attempting to construct a workable outline of the Trustee's theory from which it could apply facts to the law because evidence was so scarce.

■ The Trustee's proof did not even come close to establishing a trust. Rather, the Trustee appears to advance a heretofore unknown interpretation of what constitutes a "constructive trust" and offers no authority supporting his position. The only basis for his assertion appears to be the fact that her property, both real and personal, appeared on various financial statements, generally of undetermined origin, which contained only the debtor's name typed at the top of the page.

There was no evidence that Barbara Graham obtained title to her separate property either by an intentional false oath or promise to hold title for a specified purpose.

There was also no evidence that she obtained title to her separate property pursuant to a confidential or fiduciary duty or through any other unconscionable conduct. The Trustee never established facts or circumstances which would support imposition of a trust. Thus, his assertion that the estate is entitled to return of trust property is without merit.

The Court makes these findings and concludes that the Trustee's Complaints should be dismissed after evaluating the evidence and applying the facts as presented to the law as outlined above.

 Although the Court believes this is sufficient, it also would comment on the Trustee's argument that his case could be made not only from the minimal testimony at trial but from the voluminous documents received by the Court into evidence. He acknowledged during argument that neither he nor any other witness testified during trial regarding all of the exhibits, but contends that the evidence should be viewed liberally in favor of the Plaintiff when considering a Motion to Dismiss the Complaint. The Court does not disagree, but again finds the Trustee's interpretation of the bankruptcy process and civil procedure skewed.

The relevant federal rule supervising this procedure does not require a court to sort through multiple complex exhibits in order to discover whether a *prima facie* case does indeed exist.[2] It is not the Court's function to sort through voluminous documents and decide how best to view the evidence not discussed, which arguably could benefit one party without according due process to the other. See, also, in this regard *Matter of Borron*, 29 B.R. 122, 127 (Bkrtcy.W.D.Mo.1983) wherein the Court found that a "bankruptcy court is not required to sift through voluminous documents and create intelligibility where it does not exist."

Based on the foregoing, this Court is satisfied that both Complaints should be dismissed for a failure of proof and that

the debtor is entitled to a general discharge of all his dischargeable debts.

IT IS SO ORDERED.

---

**2.** Rule 41(b) of the Federal Rules of Civil Procedure made applicable to adversary proceedings by Rule 7041 of the Rules of Bankruptcy Procedure.