**In re John C. WIESS.**

**Kenneth O. ANDERSON, Plaintiff,**

**v.**

**John C. WIESS, Defendant.**

**Bankruptcy No. 90–40400 S.**

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

Sept. 30, 1991.

N.M. Norton, Ray Cox, Little Rock, Ark. for plaintiff.

Charles Price, Robert Gross, Little Rock, Ark., for defendant.

Randy Rice, Little Rock, Ark., Trustee.

James Hollis U.S. Trustee.

## MEMORANDUM OPINION

MARY D. SCOTT, Bankruptcy Judge.

Now before the Court is an adversary proceeding in which Kenneth O. Anderson ("Anderson"), pursuant to 11 U.S.C. § 727(a)(3), has objected to the discharge of the debtor, John C. Wiess ("Wiess"), in this Chapter 7 bankruptcy case. Anderson has also alleged that the debt owed to him by Wiess is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2) and (4). A trial was held March 5 and 6, 1991. Plaintiff appeared personally and by counsel, N. M. Norton, Esq. and Ray Cox, Esq. Defendant appeared personally and by counsel, Robert Gross, Esq. At the trial's conclusion both parties were directed to submit simultaneous post-trial briefs no later than April 26, 1991. Anderson filed a Reply brief May 3, 1991. The matter was then taken under submission.

This Court has subject matter jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 1334(a) and 157(a). Moreover, the Court finds that this is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(1) as exemplified in section 157(b)(2)(I) and (J). Accordingly, this Court may enter a final judgment in this matter.

## BACKGROUND

Wiess filed a voluntary Chapter 7 petition on February 20, 1990. An action for damages against Wiess filed by Anderson in the United States District Court, Case No. LR–C–89–297 was pending when the bankruptcy petition was filed. Anderson was granted relief from the automatic stay to pursue the district court case. This adversary proceeding however, was filed May 18, 1990, and, after Wiess filed his answer on June 1, 1990, the district court case was administratively closed.

Anderson and Wiess entered into a partnership agreement September 12, 1985 to operate a brokerage firm as a division of First Affiliated Securities ("FAS") in Little Rock, Arkansas. Both invested $25,000.00. They both also executed separate but identical Independent Contractors Agreements with FAS the same day. These documents reveal that either or both were to act as branch manager of the FAS division, and would divide equally all income and expenses arising out of certain accounts of the partnership. The partners were also required under their agreement with FAS, to share or "cover" any trading losses arising from their FAS division office.

Wiess was the registered principal of the FAS office in Little Rock, Arkansas. Wiess was the more experienced broker-dealer, who had been in the business of buying and selling bonds for many years. At trial, Wiess testified that he trained Anderson in the broker-dealer business. The office was moved from Little Rock to North Little Rock in December of 1986 where the partnership continued until December 1, 1987 when Anderson terminated the partnership.

While a partner with Anderson in the FAS Little Rock office, Wiess was the more experienced securities/bond broker-dealer. His business was sophisticated, complex and highly regulated. Federal and state laws required broker-dealerships to maintain a record of the information

contained on a "blotter." Arkansas law specifically required Wiess to maintain the "blotter" for five (5) years. Specifically, Arkansas Securities Department Rule 306.-01.B requires a broker-dealer to maintain, for five (5) years, "true, accurate and current books and records," including "blotters and journals," ledgers and similar records concerning transactions in securities and the operation of the brokerage. Relevant to this case, the "blotter" is a record of all securities transactions including purchases, sales, purchasers, sellers, dates and prices.

Anderson, in support of his objection to the debtor's discharge pursuant to 11 U.S.C. § 727(a)(3), asserts that the debtor failed to keep or preserve vital recorded information from which his financial condition or business transactions might be ascertained. Specifically, Anderson contends that Wiess did not preserve an essential journal of all the FAS trading activities in their offices, namely, the "blotter." He also contends that Wiess kept no records of the dissipation of his assets, particularly funds kept in retirement accounts and pension funds. Anderson also objects to the dischargeability of his particular claim against Wiess, pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(4). He contends Wiess, during their partnership, concealed profitable trades and appropriated property all amounting to fraud.

Wiess asserts that the Chapter 7 Trustee inquired about his retirement and pension funds at the first meeting of creditors, and made no further inquiry. He also contends that since his Chapter 7 case is a personal bankruptcy, the issue of whether or not he has in his possession records from a failed business partnership is not properly part of this adversary proceeding. He claims in any event that he has complied with all statutory requirements for a discharge in bankruptcy, and, that during his business relationship with Anderson, he maintained sufficient and accurate records which reflected the company's as well as his own financial condition. Wiess also asserts that he has met any obligation he might have to Anderson pursuant to accepted business practices and has not committed any fraud in his business dealings with Anderson.

## DISCUSSION

FAS, pursuant to federal and state regulations, maintained a "blotter." Both parties agree that the "blotter" was important as the only complete record of all FAS Little Rock securities transactions. Anderson testified that on the day he terminated his partnership with Wiess and left the FAS office the "blotter" was present. Carol Kennedy, an employee of FAS, testified that she departed FAS the same day as Anderson, and that the "blotter" was in the office when she left. Anderson further testified that the "blotter" was essential to reconstructing the business conducted in the FAS office, but that Wiess refused or was unable to produce the "blotter."

Wiess, who continued to operate the FAS office after Anderson's departure, offered no explanation or justification for his failure to produce the "blotter," but simply claimed to have no knowledge regarding its whereabouts. He asserted that a photocopy of each page of the "blotter" was regularly sent to the FAS home office in California. Although he did not obtain copies of the "blotter," and offered no explanation for his failure to do so, he maintained it would prove that Anderson's contentions were without merit and that he owed Anderson nothing.

### A. *11 U.S.C. § 727(a)(3)*

The Bankruptcy Code provides that:

(a) The court shall grant the debtor a discharge, *unless*—

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case[.]

11 U.S.C. § 727(a)(3) (emphasis added).

The discharge in bankruptcy effectuates the "fresh start" policy behind

modern bankruptcy law. Consequently, the provisions for objection to discharge under 11 U.S.C. § 727 must be construed strictly in favor of the debtor, and against the objecting creditor. *In re Graham,* 111 B.R. 801 (Bankr.E.D.Ark.1990). A debtor may be denied a discharge for failure to keep adequate financial records, regardless of a lack of intent to conceal financial information from creditors. *In re Morando,* 116 B.R. 14 (Bankr.D.Mass.1990); *In re Miller,* 97 B.R. 760, 763 (Bankr. W.D.N.Y.1989) (quoting *In re Underhill,* 82 F.2d 258, 259 (2d Cir.1936).).

 In prosecuting an objection under subsection 727(a)(3), the burden is on the objecting party to show that the debtor has failed to keep or preserve sufficient and/or accurate records which would reflect the recent financial condition of the debtor. Fed.R.Bankr.P. 4005. Once a *prima facie* case has been established, the burden then shifts to the debtor to justify why the particular record was not maintained or preserved. Any attempt to justify the failure to keep records must demonstrate that the circumstances were so unusual that ordinary record keeping was not required. *In re Morando,* 116 B.R. at 16. Whether a failure to keep or preserve records is justified is to be decided "under all the circumstances of the case." 11 U.S.C. § 727(a)(3). A debtor may be excused for loss of records as a result of an outside or destructive force. *In re Kinney,* 33 B.R. 594 (Bankr.N.D.Ohio 1983).[1]

 In a section 727(a)(3) objection to discharge, the bankruptcy court is called upon first to consider whether the debtor's records are sufficient, and if inadequate, whether the failure to maintain or preserve

adequate records was unjustified precluding the right to a discharge. *In re Reitz,* 69 B.R. 192 (N.D.Ill.1986). Whether the debtor's records are adequate depends on whether they insure that the Trustee and/or creditors receive sufficient information to track the debtor's financial dealings for a reasonable period past to present. *In re Trogdon,* 111 B.R. 655 (Bankr.N.D.Ohio 1990); *In re Potter,* 88 B.R. 843 (Bankr. N.D.Ill.1988).

 It is well settled that the Bankruptcy Code does not dictate a rigid standard of perfection in keeping business records, and that the bankruptcy court should consider the failure to keep or preserve particular records on a case-by-case basis. *Graham,* 111 B.R. at 806; *In re Mart,* 87 B.R. 206 (Bankr.S.D.Fla.1988); *In re Delancey,* 58 B.R. 762 (Bankr. S.D.N.Y.1986). In addition, the bankruptcy court is afforded broad discretion in assessing the relevant facts of the case. *In re Zell,* 108 B.R. 615 (Bankr.S.D.Ohio 1989); *In re McCall,* 76 B.R. 490, 497 (Bankr. E.D.Pa.1987). The final disposition, however, must be made in light of the purpose of the discharge exception, which is to preserve fair dealing by making the debtor's right to discharge dependent upon the debtor's ability to account, via written record, for his or her financial condition. *In re Zell,* 108 B.R. at 627. Factors which may be considered by the court in making this factual determination include debtor's education, the sophistication of the debtor, debtor's business experience, the size and complexity of debtor's business, debtor's personal financial structure, and any special circumstances that may exist. *Matter of Watson,* 122 B.R. 476 (Bankr.M.D.Ga. 1990); *In re Mart,* 87 B.R. at 206.[2]

---

1. See, also *In re Zell,* 108 B.R. 615 (Bankr. S.D.Ohio 1989) (debtor's business office was *vandalized and all records were stolen and her computer destroyed); In re Branch,* 54 B.R. 211, 215 (Bankr.D.Colo.1985) (records were accidentally lost in a fire caused through no fault of the debtor); *In re Cohen,* 47 B.R. 871 (Bankr. S.D.Fla.1985) (robberies, vandalism and fires occurred at property where the records were located).

2. *See In re Mann,* 102 B.R. 873 (Bankr.S.D.Fla. 1989) (attorney/debtor denied discharge for un-

justified failure to keep adequate records, despite illness and mental collapse); *In re Baxter, 96 B.R. 58 (Bankr.E.D.Va.1989)* (experienced accountant, in business of investment counseling, denied discharge for failure to keep records concerning identification of owners of particular funds); and *In re Roberts,* 81 B.R. 354 (Bankr.W.D.Pa.1987) (physician/debtor, also a substantial investor, denied discharge when unable to locate documentation relating to estate assets).

In *In re Sherman*, 24 B.R. 507 (Bankr. E.D.Pa.1982), the debtor ("Sherman") was a real estate broker licensed by the Commonwealth of Pennsylvania. In his bankruptcy proceeding, the only records Sherman produced were one agreement of sale, one settlement sheet, and federal income tax returns from 1978 through the then present time. Sherman contended he had no additional records presently available which could be utilized to reconstruct his business transactions. *Id.* at 508.

Relying in large part on Pennsylvania law, which required a licensed real estate broker to maintain records of transactions in which he was a participant for a period of three (3) years, the court found that Sherman's failure to keep and to preserve records detailing his activities as a real estate broker was unreasonable.[3] Sherman attempted to justify his failure to comply with the state law by arguing that the records he had provided were sufficient for an agency of his size. The court rejected this contention, stating that the Pennsylvania statute placed a duty upon the individual broker to maintain pertinent records, and did not address the size of the agency. The court was further persuaded by expert testimony at trial which revealed that it was customary for brokers to retain such documents longer than the statutory period. *Id.* Thus, the court held that Sherman had violated 11 U.S.C. § 727(a)(3), and denied his discharge. *Id.* See, also *In re Bernat*, 57 B.R. 1009 (E.D.Pa.1986).

■■■ It is clear from the testimony that any meaningful inquiry into Wiess' business transactions is impossible without the "blotter." It is the only complete record of his as well as his company's business transactions. The Court finds that Wiess' failure to preserve the "blotter" in accordance with Arkansas law was unreasonable for an experienced broker-dealer. *See In re Sherman*, 24 B.R. at 507; and *In re Bernat*, 57 B.R. at 1009. Thus, Anderson has

met his initial burden of proof under 11 U.S.C. § 727(a)(3). *Accord In re Mann*, 102 B.R. 873, 874 (Bankr.S.D.Fla.1989); *see In re McCall*, 76 B.R. at 498. The burden then shifts to Wiess to justify his failure to keep and preserve the "blotter." *In re Locke*, 50 B.R. 443 (Bankr.E.D.Ark.1985).

Initially, Wiess testified that he neither had the "blotter," nor knew its whereabouts. Wiess then changed his testimony and attempted to justify his failure to preserve the "blotter" by claiming that a copy of the "blotter" was regularly sent to the FAS home office in California. Wiess, however, failed to explain why he had never requested copies of the blotter pages sent to California either to reconstruct the record required under securities law or to satisfy the creditor's request for this relevant financial information.

■■■ It is well settled that a creditor/trustee should not be required to drag information from a reluctant and uncooperative debtor. *In re Tully*, 818 F.2d 106 (1st Cir.1987). Because of the extraordinary relief offered under the Bankruptcy Code delay and avoidance tactics are inconsistent with, and offensive to, its purpose and spirit. *Id.* Wiess' explanation that a copy of the "blotter" could be obtained is not sufficient to explain his prior statements that he did not know the whereabouts of the "blotter." Moreover, the Court finds that Wiess did not present a demeanor consistent with truthfulness.

The Court finds that Anderson has carried his burden of proving that Wiess failed to maintain and preserve vital recorded information from which his financial history might be ascertained.[4] Further, Wiess' failure to maintain and to preserve the "blotter" or obtain a replacement copy of this most essential financial document when he knew it could be obtained was unreasonable and not justified. The objection to Wiess' discharge is sustained.

**3.** Sherman testified that he did not destroy any relevant records. In an earlier deposition, however, he stated that when he moved offices in August 1981, he placed boxes of records on the curb to be removed by trash collectors. *Id.* at 508.

**4.** Evidence regarding the expenditure of funds from Wiess' retirement and pension funds was not sufficiently developed to permit the Court to make a finding.

## B. 11 U.S.C. §§ 523(a)(2) and (4)

Because the Court has concluded that Wiess' discharge is denied pursuant to 11 U.S.C. § 727(a)(3), the Court finds that it is not necessary to reach a decision with respect to Anderson's non-dischargeability claims. No claims against Wiess in this Chapter 7 case will be discharged.

## C. Measure of Damages

The final issue concerns the amount of the debt that Wiess owes to Anderson. Wiess lists the debt to Anderson as disputed and states no amount. Because of the debtor's failure to produce the "blotter," Anderson's claim is based upon what meager records the debtor did produce.

■ An overview of the Bankruptcy Reform Act of 1978, and its predecessor, discloses the Congressional intent "to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh." *Williams v. U.S. Fidelity Co.*, 236 U.S. 549, 554–555, 35 S.Ct. 289, 290–291, 59 L.Ed. 713 (1915). In light of this policy, the provisions for objection to discharge under 11 U.S.C. § 727 are construed strictly against the objecting creditor. *See In re Graham*, 111 B.R. 801. Once, however, it has been determined that the debtor is not entitled to his discharge, courts should provide full relief to creditors. *See In re Fasulo*, 25 B.R. 583, 585 (Bankr.D.Conn.1982) (dealing with non-dischargeability claims under 11 U.S.C. §§ 523(a)(2)(A) and (a)(4)). When the measure of damages is uncertain, the measure of relief should be dictated by the policies of federal bankruptcy law, and should be suitable to remedy the harm. *Garnatz v. Stifel, Nicolaus & Co.*, 559 F.2d 1357, 1360 (8th Cir.1977); *Grove v. Fulwiler*, 624 F.2d 908 (9th Cir.1980).

■ Although Anderson did not set forth an exact accounting of his complete loss, the Court has carefully examined the record, and finds that Anderson introduced sufficient evidence to provide a trier of fact with an intelligent means by which to determine an appropriate damage award.

Anderson introduced the partnership agreement that he and Wiess executed, which states that the "purpose of this partnership is to share equally in the assets and liabilities of the First Affiliated Securities, Inc. office operation in Little Rock, Arkansas." (Plaintiff's Exhibit 7). Anderson testified that, according to this agreement, they were to share equally in the profits derived from wholesale transactions that occurred at the FAS Little Rock office.[5] Anderson further testified that he routinely wrote checks to Wiess not only sharing commissions he earned, but also reimbursing him for any trading losses. Wiess, contended otherwise but was unable to offer a credible explanation why Anderson would be sharing profits and losses from the company's trades with Wiess if he was not also obligated to do likewise. Wiess merely denied that their partnership Agreement provided a division of profits received as a result of wholesale transactions. The Court is persuaded and finds credible Anderson's version of the partner's Agreement to share equally in all profits including wholesale transactions.

Plaintiff's Exhibit 4 contains a statement of Wiess' activity in wholesale trades and total commissions settled between November 28, 1987 and December 31, 1987. This particular statement shows accumulated year-to-date profits in the trading account, as well as total year-to-date commissions, paid to Wiess. The 1987 statement showed a trading profit of $145,585.16. Anderson asserts that one-half of the trading account profits for 1987, or $72,792.58, should have been paid to him by Wiess as his share under the partnership Agreement.

A statement detailing the trading profit for 1986 is not available, absent the "blotter." In order to calculate his damages for 1986, however, Anderson produced in his Exhibit 20 a copy of Wiess' 1986 1099 form showing total non-employee compensation to Wiess of $1,040,709.35. It is not ascertainable from this document what percent

---

5. Anderson testified that funds involving wholesale transactions were channeled through the 480 account, or "the trading account," of which Wiess alone kept records.

of this total constitutes profits from the trading account. Instead, Anderson relied upon Exhibit 4 which indicated that the trading account profit represented twenty-four percent (24%) of Wiess' total commissions for 1987.[6] Anderson then multiplies Wiess' total commissions for 1986 of $1,040,709.35 by 24% to arrive at a 1986 trading account profit estimate of $249,-770.22.[7] Under the partnership Agreement Anderson contends one-half of this profit, or $124,885.11, should have been paid to him. Thus, according to Anderson's proposed formula, Wiess still owes him $197,-677.69 for part of 1986 and all of 1987.[8]

Wiess testified that the $1,040,709.35 figure on his 1099 tax form for 1986 includes commissions due other FAS Little Rock employees, and, therefore overstates his earnings for that period. Other than his bare assertion, Wiess could not support his contention. Wiess conceded that the only document which would positively demonstrate his contentions was the missing "blotter." Wiess, incredibly, even goes so far as to say that the "blotter" he failed to produce would demonstrate conclusively that he owes no debt to Anderson.

Wiess' discharge has already been denied for failure to keep and to preserve the "blotter." He cannot now refute Anderson's estimation of damages by the bare statement that the "blotter," the importance of which he earlier minimized, would prove his contentions with regard to damages. Absent credible, contradictory evidence by Wiess, the evidence before the Court is sufficient to establish Anderson's $197,677.69 claim for damages.

## CONCLUSION

Wiess failed to keep the most important and complete record from which his financial history might be ascertained. As an experienced registered broker-dealer, in violation of strict federal and state securities laws, he failed to keep and to preserve the "blotter." This failure was unreasonable and no credible justification was given. Although Anderson's method of calculating his claim against Wiess may be imperfect, under the circumstances, it provides the Court with a reasonable and sufficient basis for establishing his claim.

Accordingly, it is hereby

ORDERED that the debtor's discharge is denied pursuant to 11 U.S.C. § 727(a)(3) and the debt owed to Anderson determined to be $197,677.69.

IT IS SO ORDERED.

---

6. The trading account profit in 1987 was $145,-585.16, and the total commission paid to Wiess was $606,326.71. Thus, $145,585.16 divided by $606,326.71 equals 0.24, or 24%.

7. The Court's calculation using Anderson's proffered formula resulted in the sum of $249,-770.22 whereas Plaintiff's brief calculates this sum to $249,884.79. The Court believes Anderson's calculation to be a mathematical error.

8. $72,792.58 from 1986 plus $124,885.11 from 1987.