In re Samuel & Dorinda BELL.

LACY WHOLESALE AND MAIN FACTORS, Plaintiff,

v.

Samuel J. BELL and Dorinda J. Bell, Defendants.

Bankruptcy No. 92–10032S.
Adv. No. 92–1006.

United States Bankruptcy Court,
E.D. Arkansas,
Batesville Division.

June 3, 1993.

Scott Vaughn, Little Rock, AR, R. Bryan Tilley, Heber Springs, AR, for plaintiff.

Lynn Skinner, Heber Springs, AR, for defendants/debtors.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon the trial of the Complaint objecting to discharge, filed on May 13, 1992. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 1334. Moreover, this Court concludes that this is a "core proceeding" within the meaning of 28 U.S.C. § 157(b) as exemplified by 28 U.S.C. § 157(b)(2)(J).

The complaint states a cause of action under Bankruptcy Code section 727(a)(5), alleging that the debtors failed to explain a diminution of net worth in excess of $330,-000 over a ten month period of time. Debtors submitted a written financial statement to the First National Bank of Cleburne County, Arkansas, dated April 5, 1991, in which they stated assets of $264,500, liabili-

ties of $96,301, for a positive net worth of $168,199, as of April 25, 1991. The debtors' schedules reflected that, as of the date of filing of the petition in bankruptcy on February 3, 1992, the debtors had assets of $109,850 and liabilities of $273,490, for a negative net worth of $163,640. The change in net worth was thus $331,839.

 Section 727(a)(5) provides:

The court shall grant the debtor a discharge, unless—

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any losses of assets or deficiency of assets to meet the debtor's liabilities.

11 U.S.C. § 727(a)(5). Section 727(a)(5) does not contain an intent element as part of its proof. The standard is one of reasonableness. *See generally In re Graham,* 111 B.R. 801, 806. Under section 727(a)(3), the debtor is required "to take such steps as ordinary fair dealing and common caution dictate to enable the creditors to learn what he did with his estate." *Koufman v. Sheinwald,* 83 F.2d 977 (1st Cir.1936). *Accord Graham,* 111 B.R. at 806; *Anderson v. Wiess (In re Wiess),* 132 B.R. 588, 592 (Bankr.E.D.Ark.1991). Once a plaintiff has made a *prima facie* case, the burden shifts to the debtor to justify why the particular record was not maintained. *Wiess,* 132 B.R. at 592.

 Further, the statute requires that the debtor explain a loss of assets *before* a hearing on the objection to discharge. The proof is clear that the debtors failed to explain the loss of assets. For example, at the section 341 First Meeting of Creditors held on March 18, 1992, the debtors were questioned regarding the change in net worth. Mr. Bell responded by stating:

Uh huh. Well, you're smarter than me. You tell me. I don't know.

Mrs. Bell responded to the question by stating:

I don't know.

A review of the section 341 meeting transcript indicates that the debtors gave no explanation for the loss of assets.

 At trial, the debtors offered explanations regarding their loss of assets. These explanations were unsubstantiated, uncorroborated and undocumented. Further, the testimony at trial was not credible. For example, Mrs. Bell, who was active in the family retail business, the person most familiar with the business side of the shop, and who was the bookkeeper for the business, stated that adding pluses and minuses threw her off. That a merchant and bookkeeper could be confused by simple mathematics in question is incredible.

As a partial explanation for the loss of assets the debtors asserted that they in fact purchased much more inventory than previously disclosed, all sold at a loss. This was offered to explain the dramatic increase in accounts payable. Debtors offered Exhibit No. 4, Statement of accounting for losses, which reflects two inventory amounts between January 1991 and January 1992. The first amount was $135,148. That figure was shown on the debtors' federal income tax return, Schedule C. However, Exhibit 4 also reflected an additional $140,000 in inventory. Mrs. Bell testified that the additional inventory was actually $148,000 of inventory purchased on credit in the fall of 1991 and sold for twenty cents on the dollar. She testified that debtors never paid for that inventory.

The debtors were unable to explain the disappearance of a $25,000 account receivable reflected on the April 25, 1991, Financial Statement. The bankruptcy schedule failed to list the account and no explanation was offered as to its disappearance. The debtors also received $25,000 in insurance proceeds from damaged property. However, they failed to list this loss on their schedules. The explanation for the loss of the majority of these funds is particularly troubling: Samuel Bell claims to have purchased lottery tickets with $20,000 of these funds. The Court cannot find that this constitutes a satisfactory or credible answer to explain the disappearance of these funds.

At trial, the debtors were faced with explaining a $331,839 change in net worth in the nine months preceding bankruptcy.

No explanation had been made prior to trial. At best, the debtors were able to offer only that they took a $27,000 loss on the sale of real property. The remaining explanations were unsubstantiated, uncorroborated and undocumented. In each instance, on cross-examination, plaintiff effectively discredited the explanations by delineating the flaws in the explanation. Thus, the loss of assets was not explained such that the debtors' discharge must be denied pursuant to Bankruptcy Code section 727(a)(5).

**ORDERED** that Judgment shall be entered denying debtors' discharge.

**IT IS SO ORDERED.**