In re Brenda Y. HUYNH, a/k/a Minh Dang, Debtor.

Habbo G. Fokkena, United States Trustee, Plaintiff,

v.

Brenda Y. Huynh, a/k/a Minh Dang, Defendant.

Bankruptcy No. 05–37944.
Adversary 06–3315.

United States Bankruptcy Court, D. Minnesota.

May 18, 2007.

840

Barbara J. May, Barbara J. May, Attorney at Law, Roseville, MN, for Debtor.

## ORDER DENYING SUMMARY JUDGMENT

DENNIS D. O'BRIEN, Bankruptcy Judge.

The above entitled matter came before the Court on March 12, 2007 on the United States Trustee's motion for summary judgment denying the defendant-debtor her discharge under 11 U.S.C. §§ 727(a)(2), (a)(3), (a)(4), (a)(5) and (a)(7). Appearances are noted on the record. Based upon the pleadings, files, and arguments of counsel, the Court being fully advised in the matter, now makes this **ORDER** pursuant to the Federal and Local Rules of Bankruptcy Procedure.

### I

The debtor filed for relief under Chapter 7 shortly after incurring more than $300,000 in unsecured debt through the misuse and abuse of credit card, vendor, and bank accounts. She claims that the debt was the result of purchases and sales of personal property through the credit facilities to fund a gambling addiction episode that she suffered. The alleged gambling losses were disclosed in the debtor's schedules, but, the personal property sales transfers were not. Not all bank accounts were disclosed in the schedules either. The debtor failed to disclose all the transfers and certain bank accounts in later testimony at the § 341 meeting and in a Rule 2004 examination. And, she has not documented either the gambling losses or the transfers. The plaintiff seeks summary judgment under various sections of 11 U.S.C. § 727.

The plaintiff's premise for summary judgment is that the gambling episode did not occur, and that, with regard to non-disclosure issues, the gambling episode is irrelevant. The plaintiff's motion is based on 11 U.S.C. §§ 727: (a)(2), fraudulent transfer or concealment of property to hinder or delay creditors; (a)(3), concealment, destruction, or failure to keep, financial records; (a)(4) making a false oath in connection with the case; (a)(5), failure to adequately explain loss of assets; and, (a)(7), commission of the above acts within one year before filing of the case.

The Court denies the motion for summary judgment, finding that, on the existing record, the facts in the light most favorable to the defendant are that: she suffered an episode of compulsive gambling addiction resulting in the credit debt shortly before filing; it has not been proven that the defendant transferred or concealed property to hinder or delay creditors; that, on the existing record, it has not been shown that failure to keep financial records rises to a level that should trigger denial of discharge in this case; that, on the existing record, it has not been proven that the debtor made a false oath in connection with the case; that, on the existing record, it has not been shown that the debtor's explanation of loss of assets is inadequate; and, therefore, it has not been proven that the commission of the above acts occurred within one year of filing of the case.

### II

*Debtor's Personal Profile.*

The debtor, born in Vietnam, came to the United States in 1990. She attended

high school in California for three years, and later obtained an associates degree in business from Evergreen Valley College in San Jose, California in 1997. She moved to Minnesota in 1999 to get married, and, after some temporary accounting jobs, she was employed as a business consultant with Wells Fargo Bank for about three years. Her husband died of cancer in 2004, and in September of that year she moved back to California. While in California, she worked at Mervyn's Department Store in the accounting department. She returned to Minnesota on June 1, 2005, and has not been employed since. At filing, her income consisted of social security payments for herself and two children in the amount of $2800.00 per month.

*Prepetition Debt Runup.*

The facts of record most favorable to the defendant show that she obsessively and compulsively gambled during the summer of 2005, resulting in losses of more than $300,000. Prior to July of that year her bank and credit card accounts carried nominal balances. She funded the gambling largely through the misuse of credit cards, abuse of vendor credit accounts, and check kiting. The defendant used the credit cards and vendor accounts to purchase personal property and gift cards, which she then sold for cash at steep discounts. She issued checks that she knew were not backed by existing deposits, and perhaps not existing accounts, to vendor and credit card accounts in order that it appear that she was paying the accounts in full and timely, which in turn allowed her to draw the accounts up to 100% over their credit limits. In at least one instance, she kited a check to her own bank account. The defendant also sold a leased granite

cutter she had intended to use in a startup business at a discount of approximately 50%.[1] According to the facts of record most favorable to the defendant, apparently she mistakenly thought that she had purchased the cutter, not leased it.

The facts of record most favorable to the defendant show that during this period she suffered from a pathological gambling syndrome that resulted in the delusion that she needed to continue to gamble in the face of ever increasing losses in order to repay the debts that resulted from the funds used to gamble—an irrational quest for the "jackpot." She believed that she would ultimately win big and intended to pay her creditors when she hit the "jackpot."

The facts of record most favorable to the defendant indicate that she quit gambling after this two month period in the summer of 2005. By then all credit lines had been cut, her income was a modest social security payment resulting from the death of her husband, and she no longer had access to funds needed to gamble.

*The Bankruptcy Filing And Postpetition Disclosures.*

On October 6, 2005, the defendant filed bankruptcy under Chapter 7 of Title 11 U.S.C., the Bankruptcy Code. Her attorney took the case, although very busy with other debtor cases.[2] None of the numerous transfers of personal property made by the debtor at steep discounts for cash to fund the 2005 gambling, except the transfer of the cutting machine, were disclosed on the petition, although they occurred only a few months before the filing. The debtor did not disclose the transfers at the meeting of creditors either, but

---

1. Four of these creditors have nondischargeability actions pending against the defendant arising out of the use of her accounts, and sale of the granite cutter.

2. The newly enacted Bankruptcy Abuse Prevention And Consumer Protection Act of 2005 was scheduled to become effective on October 20, 2005, and debtors scrambled to get filings in before the effective date.

testified that she had reviewed her petition and schedules and that they were accurate.

Only sometime after the creditors' meeting did the debtor, through correspondence from her attorney to an attorney for the plaintiff, disclose information of numerous transfers of personal property for less than reasonable value. She has since amended her schedules to disclose some of the transfers, but not all. The letter discloses that the debtor purchased gift cards, artwork, and karaoke machines, then sold those assets at a 50% discount, and, that she invited "strangers" into her home to buy her furniture, all to fund the gambling. Credit card and other financial documents pertaining to the debtor's accounts obtained by the plaintiff reveal that jewelry and electronic equipment were also purchased. The amended Statement of Financial Affairs, filed by the debtor on December 15, 2005, discloses only that she "[b]ought gift cards and sold them to fund gambling, and she bought art work and a karaoke machine to fund gambling, all in June and July, 2005." The defendant has not documented either the transfers or the gambling losses, although the information was requested by the plaintiff.

Disclosure of bank accounts in the debtor's schedules was not complete either. Her schedules and testimony at the Section 341 creditors' meeting disclosed that she had one checking account at TCF bank, one account at MidCountry bank, one account at Prior Lake State Bank, an inactive U.S. Bank account, and a joint account with another person at TCF Bank. Actually, she had other accounts that the plaintiff discovered, which had not been scheduled or disclosed at either the § 341 meeting or at a later Rule 2004 examination. The debtor appeared at the Rule 2004 examination without counsel, explaining that her attorney refused to appear with her unless she paid the attorney $1,500 in advance, which she said she did not have.

## III

Summary judgment is appropriate where there exists no undisputed question of material fact, leaving only a question of law to resolve a dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed. R. Bankr.P. 7056, Fed.R.Civ.P. 56(c). Here, there remain disputed questions of material fact, precluding summary judgment.

**11 U.S.C. § 727(a)(2).**

Under Section 727(a)(2), the Court may deny a debtor's discharge, if:

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

  (A) property of the debtor, within one year before the date of the filing of the petition; or

  (B) property of the estate, after the date of the filing of the petition.

The plaintiff's theory here is that the defendant did not experience a gambling addiction episode, but incurred more than $300,000 in debt in essentially a two month period with nothing to show for it because she concealed or transferred property purchased during the period to hinder, delay or defraud her creditors. That may be. But, facts win cases, not theories. The facts of record most favorable to the defendant is that she did experience a gambling addiction episode.

In my opinion, Ms. Huynh, based on her reporting and my assessment, presents as a pathological gambler. She meets criteria by her reporting that she has

had a preoccupation with gambling. Spent increased amounts of money to achieve excitement, has had unsuccessful efforts to control her gambling, and has been irritable when she has tried to stop.

The delusion of the compulsive gambler is that they're so far in debt from their gambling that they need to continue in order to pay back all the money they've used to gamble. Of course, the money would be paid back with the next big jackpot that seems inevitable to them because they spend so much time gambling. They have an inability to see each bet as separate. They begin to compromise their values and lie to conceal the extent of their gambling. Sometimes illegal acts are committed such as forgery, kiting checks. Fraud or embezzlement from their jobs—all to finance their gambling. Seeing themselves as hopeless. They can't explain, even to themselves, why they persist and suicide becomes an option. Compulsive gamblers have a high rate of suicide attempts. I have worked with Ms. Huynh since October 5, 2006. I believe that her intent was not to defraud creditors but to "borrow," with the intent of paying all the money back with her next big win.

Susan Johnson. M.A., l.A.M.F.T. Gambling Treatment Specialist.

*Affidavit of Susan Johnson attached* to the defendant's response to the plaintiff's motion, filed February 2, 2007. In summary judgement proceedings, facts of record most favorable to the non-moving party are controlling. *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

While the defendant's gambling addiction might be insufficient to overcome a summary judgment motion in an 11 U.S.C. § 523(a)(2) and (a)(6) action (see: *Universal Pontiac–Buick–GMC Truck Inc. v.*

*Routson, (In re Routson),* 160 B.R. 595 (Bankr.D.Minn.1993), the addiction, as explained by the defendant's expert, is sufficient to overcome a summary judgment motion based on 11 U.S.C. § 727(a)(2)).

**11 U.S.C. § 727(a)(3).**

Under § 727(a)(3), the Court may deny the discharge of a debtor, if:

> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

Debtors are required to keep adequate financial records to enable parties and the Court to trace the debtor's financial history, reconstruct financial transactions, and test the completeness of the disclosure requirements. *In re Pulos,* 168 B.R. 682, 690 (Bankr.D.Minn.1994). Ordinarily, failure to do so will result in a denial of discharge, and the failure might result in denial of discharge here.

But, summary judgment denial of discharge is an extreme remedy with serious implications that go beyond the context of the bankruptcy case. It can be used as a springboard for federal criminal indictment and prosecution. Given the present state of the record: the incredibly large amount of debt accumulated in such a short period of time by a debtor who has no prior history of credit misuse or abuse; the affidavit of the debtor's expert; and, the paper trail left by credit card and bank account statements; the failure might not be sufficient to deny the debtor her general discharge after full development of all the circumstances of the case. Denial of general discharge under 11 U.S.C. §§ 727(a)(3) is discretionary, not mandato-

844

ry. *Anderson v. Wiess (In re Wiess),* 132 B.R. 588 (Bankr.E.D.Ark.1991).

## 11 U.S.C. § 727(a)(5)

■ Under Section 727(a)(5), the Court may deny the discharge of the debtor, if:

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

The defendant explains that she used her credit card and bank accounts to purchase personal property that was sold for cash at steep discounts to fund a gambling episode over a period of essentially two months, resulting in debt to these creditors of more than $300,000. The plaintiff argues that the explanation is implausible and that, as a matter of law, it is inadequate.

But, in light of the facts most favorable to the defendant on the existing record, her explanation is not only plausible, it is highly probable. And, no other plausible explanation comes to mind. Summary judgment is not appropriate under 11 U.S.C. § 727(a)(5).

## 11 U.S.C. § 727(a)(4).

Under Section 727(a)(4), the Court may deny the discharge of a debtor, if:

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account.

■ This section, when violated by a debtor, will always result in denial of the general discharge. Here, it is irrelevant whether the defendant had a gambling addiction episode in 2005. The issue is whether she made a false oath or account in her petition and schedules through omission, and whether she lied under oath at the § 341 meeting and later at the Rule 2004 examination. There is no question that the defendant's schedules omitted assets and transfers. And there is no question that omissions continued through testimony at the § 341 meeting and the Rule 2004 examination. The question is whether the omissions were knowingly and fraudulently made. It is a question of material fact that remains, given the present record of this case.

The debtor's initial attorney in the case gave an affidavit attached to the response to this motion, where she testifies, in part:

4. At the time Debtor became my client, I was extremely busy with the enormous number of Debtors who were trying to get their cases filed before BAPCPA went into effect. Although I had new client intake interviews scheduled about every half hour, I spent nearly 2 hours with Debtor in her first meeting with me.

6. From the beginning, I had a hard time communicating with Debtor.

7. Her English sounds good. Her accent is minimal.

8. However, I noticed that Debtor did not follow instructions well and often asked questions that indicated that she had not understood what we discussed. Even when I remember that I specifically asking her if she understood, it was clear to me from Debtor's actions and statements at a later time that she had no idea what I was talking about.

9. Debtor's apparent lack of understanding of the questions that I asked her as well as questions put to her at her § 341 hearing lead to her Chapter 7 Trustee filing an objection to her homestead exemption which I successfully defended.

*Affidavit of Ms. Barbara May,* March 5, 2007.

Under circumstances of the case, as reflected by the present record, it is not clear that representation of the debtor was adequate to advise her properly regarding what disclosures were required by her bankruptcy schedules and later testimony.

For example, counsel was aware that the debtor claimed recent gambling losses of more than $300,000 when her sole income disclosed to counsel was social security payments for her and the debtor's two children in the monthly amount of $2,800. The obvious information that needed to be obtained from the debtor was where the money came from to fund the gambling. Was the question asked, and, if so, how was it answered? It must be assumed that the numerous purchases and sales of personal property, claimed by the debtor to have been made to fund the gambling episode, would have at least been generally disclosed as required transfer disclosures if counsel had known about them. Why did counsel not know about them? Was it because the question about funding the gambling was not asked, or because the debtor lied?

That is not the only aspect of legal representation of the debtor that appears problematic from the present record. At the Rule 2004 examination, the debtor testified that she was present without counsel because she could not afford the $1500 demanded by counsel in advance for counsel to appear. If this is true, counsel's failure to appear and represent her client at the hearing seriously compromises the effectiveness of any testimony from which adverse inferences might otherwise be drawn. A Rule 2004 examination is a proceeding in a main Chapter 7 bankruptcy case, and active representation by debtor's counsel is required by Local Rule 9010–3(e):

(e) Substitution; Withdrawal.

4) Effect of Failure to Comply. Until a substitution of attorneys is filed or an

order is entered allowing the original attorney to withdraw, the original attorney is the client's attorney of record and the original attorney shall represent the attorney's client in bringing and defending all matters or proceedings in the bankruptcy case other than adversary proceedings in which the original attorney has not yet made an appearance. Failure to receive advance payment or guarantee of attorney's fees is not grounds for failure to comply with this subsection.

It may be that, after a complete record is made through trial, the defendant's omissions will be shown to rise to the level of denial of discharge under 11 U.S.C. § 727(a)(4). But, that drastic result would amount to an unnecessary rush to judgment on the existing incomplete record in this summary judgment proceeding.

## IV

Based on the forgoing, the Court concludes that the granting of summary judgment is inappropriate in this proceeding, and the plaintiff's motion is **DENIED.**