**In re Albert BESHEARS and Nancy Beshears.**

**Daniel K. SCHIEFFLER, Trustee, Plaintiff,**

v.

**Nancy BESHEARS, Wallace King, and Marie King, Defendants.**

Bankruptcy No. 93–10235 S.
Adv. No. 94–1047.

United States Bankruptcy Court,
E.D. Arkansas,
Batesville Division.

May 4, 1995.

William C. Ayres, W. Memphis, AR, for trustee.

Jim Lyons, Jonesboro, AR, for defendants.

Daniel K. Schieffler, Trustee, Helena, AR.

J. Maurice Rogers, North Little Rock, AR, for First State Bank of Newport.

Robert Meurer, Searcy, AR, for debtor Albert Beshears.

### ORDER

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE came before the Court upon the trial in the adversary proceeding, Schieffler v. Beshears, AP NO. 94–1047, as well as objections to exemptions claimed by the debtor Nancy Beshears, now named Nancy King.[1] The contested matters were tried with the adversary proceeding upon the request of the parties inasmuch as the same facts and law are at issue in both proceedings.

### The Nature of the Proceedings

In 1981, King's parents deeded to her as a gift a small piece of real estate near them. A mobile home was placed upon the land and King lived there with her husband and daughter. Under Arkansas law, this became King's homestead. *See Smith v. Webb (In re Webb)*, 121 B.R. 827, 829 (Bankr.E.D.Ark.1990). On August 30, 1993, Albert Beshears, King's husband, quitclaimed his interest in the property to King. On September 17, 1993, King deeded the property to her parents, but continued living on the property. No consideration was given for these transactions, nor were the transactions disclosed on the bankruptcy petition.

In the summer of 1993, King separated from her husband, but reconciled with him for a short time in the late-fall or winter of 1993. The joint bankruptcy case was filed on December 1, 1993.[2] King claims not to have signed the schedules or petition and avers that her husband signed her name. Thus, she asserts, she was unaware that the transactions regarding the property were not disclosed. However, she did appear at the first

---

1. The debtors divorced in August 1994.

2. Although the signatures on the schedules are dated November 29, 1993, they were not filed until December 29, 1993, after debtors requested and were granted an extension of time to file the schedules.

meeting of creditors at which time she noticed that there were numerous errors on the schedules. Indeed, although the first meeting was not concluded for a period of over two months,[3] and despite her knowledge gained at the first meeting that the schedules were inaccurate, and having a lengthy period of time in which to review the schedules, she failed to disclose the transfer of her real property.

In June 1994, King filed a motion to substitute counsel. New counsel, within three days of the motion, caused debtor to amend her schedules to exempt the subject real estate as her homestead and to disclose the transfers of property. However, it was not until September 27, 1994, that King's parents deeded the property back to her.

Objections were filed to King's exemption of her homestead on numerous grounds. In addition, on November 14, 1994, the trustee filed a Complaint to Avoid Transfer against Nancy King and her parents in which the trustee sought to avoid both the transfer from the Kings to the debtor and the transfer from the debtor to the Kings. The complaint alleges that transfer from the debtor should be avoided pursuant to the fraudulent transfer provisions of the Bankruptcy Code, 11 U.S.C. § 548(a)(1), (2). The transfer from the Kings to the debtor is sought to be avoided inasmuch as the debtor is the immediate transferee of the initial fraudulent transfer. 11 U.S.C. § 550. The complaint also alleges a separate count under the Arkansas fraudulent transfer statute, Ark.Code Annot. § 4–59–201, *et seq.* If judgment is granted for the trustee, the property becomes the property of King, as of the date of the filing of the bankruptcy petition, and thus, under section 541, property of the estate. The property is then subject to claims of exemption by the debtor and objection to that claim of exemption.

■ The facts of this case illustrate an interesting point of bankruptcy law. Although the Court believes that debtor's second counsel advised that the property must

be reconveyed to her in order to rectify the initial fraudulent transfer, the legal effect is to transfer the property to the debtor free of the bankruptcy. 11 U.S.C. § 541(a). Since assets acquired post-petition by the chapter 7 debtor generally do not become property of the estate, the trustee in this case was required to sue to set aside both transfers to bring the property into the estate. In order to determine the issues, the Court must first make findings of fact and conclusions of law on the adversary proceeding, and, if the property is property of the estate, determine whether the claim of exemption is proper. Based upon the facts adduced at trial and the credibility of the witnesses, the Court finds that the transfers should be set aside under sections 548(a)(1), (2), 550, and that the objections to exemption must be sustained.

### The Transfer from King to Her Parents

■ The transfer from Nancy King to her parents was a fraudulent transfer under sections 548(a)(1) and (2) as well as the Arkansas fraudulent transfer statute, Ark.Code Annot. § 4–59–204. Section 548(a)(2), a constructive fraud provision, requires only that the trustee show that the debtor received less than a reasonably equivalent value for the property and that she was insolvent on the date of the transfer or became insolvent as a result of the transfer. Neither of these elements are seriously in dispute. The debtor testified that she received nothing in exchange for the property and that she owned few other assets in contrast to her large debts.

■ Secondly, the Court finds that there was actual fraud, *i.e.*, that the transfer was made with the intent to hinder, delay, or defraud her creditors, 11 U.S.C. § 548(a)(1), Ark.Code.Annot. § 4–59–204, in the conveyance from the debtor to her parents. Since fraud can rarely be demonstrated by direct evidence, the courts generally look to certain factors, or "badges of fraud" to make the determination of whether fraudulent intent

---

**3.** Originally scheduled for January 18, 1994, the original 341(a) meeting was cancelled due to bad weather. The debtors' 341(a) meeting began on February 15, 1994, but was not concluded on

that date. The debtors failed to appear at the next meeting, scheduled for March 15, 1994. The examination of the debtors was not concluded until April 19, 1994.

exists. Federal law and Arkansas law use the same factors, looking to whether

(1) the transfer was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer was concealed;

(4) before the transfer occurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all of the debtor's assets;

(6) the debtor absconded;

(7) the debtor concealed other assets;

(8) the value received for the transfer was not reasonably equivalent to the value of the asset transferred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made; and

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred.

Ark.Code Annot. § 4–59–204(b)(1)–(10); *Graven v. Fink (In re Graven )*, 936 F.2d 378, 383–84 n. 8 (8th Cir.1993); *United States v. Johnston*, 245 F.Supp. 433 (W.D.Ark.1965) (Henley, J.).

■ Virtually every badge of fraud is present in this case. The debtor transferred her largest asset, indeed her only asset of value, to close relatives near in time to the filing of her petition in bankruptcy and, it appears, near in time to her husband's difficulties [4] in which his assets or holdings were seized by state and federal narcotics authorities. Despite the transfer to her parents, she retained control over the property and treated it as her own. *Cf. Bearden v. Baugh (In re Baugh )*, 60 B.R. 102 (Bankr.E.D.Ark. 1986); *Max Sugarman Funeral Home, Inc. v. A.D.B. Investors*, 926 F.2d 1248, 1254–56 (1st Cir.1991); *Salomon v. Kaiser (In re Kaiser )*, 722 F.2d 1574, 1582–83 (2d Cir. 1983). Thus, the Court finds that the transfer was made with the intent to hinder, delay, or defraud her creditors within the meaning of 11 U.S.C. § 548(a)(1) and Ark. Code Annot. § 4–59–204(a)(1).[5] Accordingly, the first transfer, from the debtor to her parents should be set aside. 11 U.S.C. § 548(a); Ark.Code Annot. § 4–59–207.

### The Transfer from the Parents to King

Section 550 of the Bankruptcy Code provides for recovery of property which has been transferred. That is, once the initial transfer has been avoided, section 550 assists in recovery of the property, or its value, from subsequent transferees. It provides that,

[T]o the extent that a transfer is avoided under section … 548 … the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).

■ In the instant case, the property is subject to recovery for the benefit of the estate pursuant to section 550(a) inasmuch as Nancy King, who received the property, is the immediate transferee of the initial transferees, King's parents. None of the exceptions relating to good faith purchasers for value are applicable. *See Max Sugarman*, 926 F.2d at 1256–57. Accordingly, both transfers are avoided such that the real property is property of the debtor as of the date of filing of the petition in bankruptcy and, therefore, is included in the bankruptcy estate, 11 U.S.C. § 541(a).

### The Objections to Exemption

■ Section 522(g) of the Bankruptcy Code preserves the right of a debtor to claim an exemption in property the trustee recov-

---

**4.** Albert Beshears was incarcerated by the Arkansas Department of Corrections. He is currently a fugitive.

**5.** The only circumstance that indicates any good faith on the part of this debtor is the fact that she later obtained counsel whose ethical reputation and practice could assist her in taking steps to rectify her misdeeds. This fact however, while it may assist her in the present conduct of her case, does not negate the original fraud.

ers pursuant to the avoiding powers. However, in order to claim such exemptions, the debtor's transfer of property must have been involuntary and not concealed. The statute states:

> (g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under sections 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—
>
> > (1)(A) such transfer was not a voluntary transfer of such property by the debtor; and
> >
> > (B) the debtor did not conceal such property * * *

Thus, under the statute, if debtor cannot meet the requirements of (A) *and* (B), she is not entitled to exempt the property. In the instant case, it is not seriously disputed that the debtor made a voluntary transfer of the property. Her assertion that the transfer was made upon advice of counsel, does not obviate the voluntariness of her act in transferring the property to her parents.[6] The debtor has made no showing of coercion or misrepresentation so as to render the transfer involuntary. Further, it appears that she was fully cognizant of her actions and sought merely to place the property beyond the reach of her creditors. Accordingly, upon recovery of the property into the estate, the debtor is not entitled to exempt that property. *See generally In re Davis*, 169 B.R. 285, 295–96 (E.D.N.Y.1994); *In re Huebner*, 18 B.R. 193 (Bankr.W.D.Wisc.1982).

### Debtor's Arguments

■ Debtor's assertion that she, in effect, "avoided" the transfer herself by having her parents reconvey the property to her is erroneous for numerous reasons. She relies upon section 522(h) of the Bankruptcy Code which provides that the debtor may institute a proceeding under the Bankruptcy Code to avoid the transfer in order that it may become property of the estate. The debtor may avoid the transfer if—

> (1) the trustee does not act to avoid the transfer;
>
> (2) the transfer is avoidable by the trustee under sections 554, 545, 547, 548, 549 or 724(a) or recoverable under section 553; *and*
>
> (3) the debtor could have exempted the property under subsection (g)(1) if the trustee avoided the transfer, then the debtor may avoid a transfer. 11 U.S.C. § 522(h). This

debtor cannot meet two of these requirements: the trustee in fact instituted proceedings to avoid the transfers;[7] and, as discussed above, since the property was voluntarily transferred by the debtor prepetition, she is not permitted, under the Bankruptcy Code to exempt the property. 11 U.S.C. § 522(g).

Secondly, the debtor's informal "avoidance" does not, as she asserts, return the property to the estate. 11 U.S.C. § 541(a). Rather, as discussed above, the legal effect was to place the property in the hands of the debtor free of the bankruptcy. Although section 541(a), listing property of the estate, addresses the situation in which property is recovered, 11 U.S.C. § 541(a)(3), that section applies only to property avoided by the trustee, not any other person.

Finally, simply altering legal title does not constitute an avoidance because the Code, in referring to the trustee's avoiding powers, refers to those specific causes of action by which the trustee may recover property into the estate. Debtor's maneuvering does not fall within the statutorily authorized methods for "avoiding" transfers.

■ The debtor also argues equity and policy. Specifically, she argues that section 522(h) effects the policy of permitting the debtor "to use all means that are authorized to protect her exemptions." As discussed above, she cannot meet the express require-

---

**6.** It does not appear that any potential malpractice action would be property of the estate.

**7.** The debtor also complains that the trustee waited three months to act to avoid the transfer.

Since the debtor herself waited ten months from the time the bankruptcy was filed and three months from the time she obtained new counsel, this argument carries little weight.

ments of section 522(h) such that her exemption in her residence is not protected. Indeed, her conduct obviates her ability to exempt the residence under section 522(g). More to the point, however, is the Code policy of reserving the unencumbered fresh start for the honest debtor. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The debtor is not, as she claims, a "wholly innocent party in this situation." It was she who transferred the property to her close relatives, for no consideration, prior to the bankruptcy. It was she who did not act to disclose the transfer for many months. Having viewed the demeanor of the debtor, the Court does not believe she was so intimidated by the proceedings that she could not raise the issue of the accuracy of the schedules.[8] Moreover, there is no evidence, much less a reasonable inference, that her husband persuaded her to transfer her separate property to her parents. She argues that it was not her misdeeds that caused the schedules to state erroneous facts. However, it is not the failure to disclose the transfer on the schedules that deprives her of her right to exempt the property. Rather, the fraudulent transfer to her parents prior to the bankruptcy is the operative act. *See* 11 U.S.C. § 522. She can claim no innocence with regard to the transfer.

### Conclusion

The first transfer, from the debtor to her parents will be set aside as a fraudulent transfer, pursuant to 11 U.S.C. § 548(a); Ark.Code Annot. § 4–59–207, and the property recovered from the debtor for the benefit of the estate pursuant to 11 U.S.C. § 550(a). Further, having voluntarily transferred the property prior to the bankruptcy, the debtor is not entitled to exempt the property once it is returned to the estate. Accordingly, it is

**ORDERED** as follows:

(1) that judgment shall be entered in favor of the trustee in the adversary proceeding.

(2) the "Trustee's Objection to Amended Schedule to Exempt Property filed by Debt-

or, Nancy Beshears," filed on October 25, 1994, is SUSTAINED.

(3) the "Objection of First State Bank of Newport to Amended Schedule of Exempt Property Filed by Debtor Nancy Beshears" on October 17, 1994, is SUSTAINED.

**IT IS SO ORDERED.**

### *JUDGMENT*

This action came on for trial before the Court, Honorable Mary Davies Scott, U.S. Bankruptcy Judge, presiding, and the issues having been duly tried and a decision having been duly rendered,

**It is Ordered and Adjudged** that the plaintiff Daniel K. Schieffler, Trustee, recover of the defendants Nancy Beshears King, Wallace King and Marie King the property described in the complaint. The transfer made on September 27, 1994, Wallace King and Marie King to Nancy King is null and void. The transfer made on September 17, 1993, from Nancy King to Wallace King and Marie King is null and void. The subject real property is property of the bankruptcy estate to be administered by the trustee in accord with the Bankruptcy Code.

**It is So Ordered.**

---

8. Several of the facts and, particularly, quotes, appearing in debtor's post-trial brief in support of her argument are not in the record.