In re Albert BESHEARS and
Nancy Beshears.

Daniel K. SCHIEFFLER,
Trustee, Plaintiff,

v.

Troy COLEMAN and Coleman Farms
Partnership, Defendants.

Bankruptcy No. 93–10235 S.
Adv. No. 94–1014.

United States Bankruptcy Court,
E.D. Arkansas,
Batesville Division.

Feb. 7, 1996.

William C. Ayres, West Memphis, AR, for Daniel K. Schieffler, Trustee.

D. Keith Blackman, for Troy Coleman and Coleman Farms Partnership.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE came before the Court upon the trustee's complaint to avoid post-petition transfers of corporate stock and assets owned by the debtor, Albert Beshears.

The debtor Albert Beshears was a farmer in Jackson County, Arkansas for several years prior to the filing of his Chapter 7 petition on December 1, 1993. In December 1988, the debtor and Rebecca Winemiller formed an Arkansas corporation named Al & Beck, Inc., each holding fifty percent of the shares of the corporation. Beshears was the president throughout the corporation's existence. In December 1989, the corporation acquired approximately 914 acres of farm land in Jackson County, Arkansas.[1] The corporation paid $750,000 for the farm. To finance a portion of the purchase, the corporation gave the mortgagee, Travelers Insurance Company, a promissory note in the amount of $555,000, secured by a mortgage on the farm land. Beshears leased the land from the corporation from 1990 through 1993.

In July 1993, Beshears and Winemiller entered into a Stock Purchase Agreement under which Winemiller agreed to sell her half of the stock to Beshears for $50,000. $10,000 of the purchase price was paid upon execution of the agreement and the balance was due by January 15, 1994. The agreement further provided that if Beshears defaulted on the balance, he would forfeit all of his shares to Winemiller. The shares of both parties were placed in escrow.

In the fall of 1993, the debtor realized that he would be unable to pay the $40,000 to Winemiller by January 15, 1994, to acquire her shares. Accordingly, he had numerous discussions with Troy Coleman regarding the farm throughout 1993. On December 1, 1993, the debtor Albert Beshears, together with his wife, filed a Chapter 7 petition in bankruptcy. On January 14, 1994, the day prior to the time he was to deliver $40,000 to Winemiller, Beshears met with Coleman. At that meeting they signed the Purchase Agreement entered into between Al & Beck, Inc. and Beshears as Sellers, and Troy Coleman as buyer.[2] Under this agreement Coleman would purchase stock and land, to wit:

(1) Coleman would pay Beshears $40,000 to purchase Winemiller's shares;

(2) Beshears would transfer his fifty percent of the stock in Al & Beck, Inc. to Coleman.

(3) The corporation would convey the property to Coleman.

(4) Coleman would pay the balance on the note to the mortgagee.

The parties adjourned to the escrow agent's office where Beshears obtained all of the shares of stock and delivered them to Coleman.[3] Several days later, at Coleman's

---

1. The corporation also purchased another 560 acre farm, "the East Cow Lake Farm." However, that farm was sold by the corporation in the fall of 1993. On the date of the petition, December 1, 1993, and on the date of the transfer, January 14, 1994, the only asset owned by the corporation was the 914 acre farm in Jackson County.

2. Coleman was aware that Beshears had filed bankruptcy. Not only had Beshears orally advised him of that fact, the Purchase Agreement stated:

Seller, Albert Beshears, advises that he has previously filed an individual bankruptcy petition within the last twelve month period, but warrants that he is the owner free and clear of

all stock in the aforesaid corporation, and any interest in the realty and stock purchase agreement hereinbefore noted, and that there are no liens or attachments through the Bankruptcy Court on said property.

Apparently, the attorney who prepared this statement neglected to read section 541 of the Bankruptcy Code.

3. There is disagreement as to who left the building with the shares. At his section 341 meeting, before his numerous and acrimonious disagreements with the trustee (Beshears was subsequently indicted for threatening the trustee), Beshears testified that Coleman took the shares. On direct examination by the trustee's attorney, Beshears suffered a memory lapse. On direct

direction, Al & Beck, Inc., by its president Beshears, conveyed the property to Coleman Farms Partnership.

■ The Bankruptcy Code makes all unauthorized post-petition transfers of property of the bankruptcy estate voidable by the trustee.[4] The Bankruptcy Code provides in pertinent part:

§ 549. Postpetition transactions.

(a) Except as provided in subsections (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

(b) In an involuntary case, the trustee may not avoid under subsection (a) of this section a transfer made after the commencement of such case but before the order for relief to the extent any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, is given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has.

(c) The trustee may not avoid under subsection (a) of this section a transfer of real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to the interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected.

11 U.S.C. § 549. Thus, the elements of a cause of action under section 549 are as follows:

1. A transfer of property occurred;

2. The property was property of the estate;

3. The transfer occurred after the commencement of the case; and

4. The transfer was not authorized under the Code or by the Court.

■ Under Rule 6001, Federal Rules of Bankruptcy Procedure, any person asserting the validity of a post-petition transfer has the burden of proof. Thus, Coleman must prove that the elements do not exist. There is no question that a transfer of property occurred, after the commencement of the case, and that the transfer was unauthorized. The defendants assert, however, that the property transferred was not property of the estate. Specifically, defendants argue that only real estate, owned by the nondebtor corporation, was transferred such that they cannot be liable.

On the date of the filing of the petition in bankruptcy, the bankruptcy estate included Beshears' fifty percent ownership of the stock and a right to purchase the remaining fifty percent for $40,000. The value of the stock in Al & Beck, Inc. consisted of the value of that company's assets, the land valued at $681,750.[5] Under the Purchase Agreement Beshears transferred his stock—fifty percent—to Coleman, obtained Winemiller's fifty percent, and caused the corporation to transfer its sole asset to another entity, Coleman Farms Partnership. Thus, prior to

---

examination by his friend Coleman's attorney, Beshears stated that he retained the shares.

4. None of the exceptions are applicable in this case.

5. The Court accepts the valuation of plaintiff's expert. Mr. Rutledge was thorough, professional, credible, and his testimony supported by the evidence of the Farm Credit System appraiser. Although much of the defendants' defense rested upon Beshears' poor land management and particular problems with the land, these defects were taken into account by Mr. Rutledge in his valuation. Defendants' experts were neighbors and suppliers of Coleman and Beshears.

the transfer, the bankruptcy estate had rights to property: fifty percent of the stock and the absolute right to purchase the remainder of the stock by a date certain for a mere $40,000. The value of Beshears' interest in the corporation, and thus, the value to the estate, was $641,750 (value of the property less the $40,000 owed to purchase the remainder of the stock). However, after the transfer to Coleman, the estate held only fifty percent of the shares of stock in a corporation that had no assets. Accordingly, the transfer reduced the estate's interest in the corporation to zero.

▮ A transfer means, for purposes of the Bankruptcy Code, "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." 11 U.S.C. § 101(54). This section is interpreted broadly to effect the provisions of the Bankruptcy Code. *Carmel v. River Bank America (In re FBN Food Services, Inc.)*, 175 B.R. 671, 683 (Bankr.N.D.Ill. 1994), *aff'd*, 185 B.R. 265 (N.D.Ill.1995). Moreover, it is well settled that a transfer does not have to be made directly by the debtor. *See id.* If the effect is to defraud the creditors, the transfer should be avoided. *See id.; In re Albion Disposal, Inc.*, 152 B.R. 794, 806 (Bankr.W.D.N.Y.1993) ("if the trustee can establish that the Debtor had some kind of valuable interest that was interfered with, he may defeat [the transfer] to that extent."). In the instant case, there is no question that a transfer of property of the debtor occurred by the transaction between the parties. Although the mere form was a transfer by the corporation, the substance was a transfer of the entire value of the asset, depriving the bankruptcy estate of that valuable asset. By the transfer, the debtor disposed of the entire value of his interest in the corporation.[6] The value of the debtor's stock was inextricably tied to the value of the property held by the corporation since the corporation's sole asset was that real estate. The stock had no value once the land was transferred. Once the land was transferred, the estate was depleted by the value of that asset. *Cf. Pinto v. Philadelphia Fresh Food Terminal Corp. (In re Pinto )*, 89 B.R. 486, 497 (Bankr.E.D.Pa.1988) (subsequent order granting new trial *rev'd*, 1989 WL 234516 (E.D.Pa.1989)). Inasmuch as the transfers of stock and land held by the corporation constituted transfers of an interest of the debtor, the transfers must be avoided pursuant to section 549.

▮ According to the Purchase Agreement, Coleman purchased fifty percent of the stock of the corporation and would take title to the land. However, the land was conveyed, at Coleman's direction to Coleman Farms Partnership. Accordingly, Coleman was the transferee of the stock and the partnership the transferee of the land. Section 550 provides for the liability of the transferees of transfers avoided pursuant to section 549. To the extent that a transfer is avoided under section 549, the trustee may recover under section 550 the property transferred, or, if the Court so orders, the value of such property. Troy Coleman was the initial transferee of stock of Al & Beck, Inc., and the entity for whose benefit the transfer was made of the land. He is the true beneficiary of the transaction as well as the one who holds dominion or control over the assets. *See generally In re FBN Food Services*, 175 B.R. at 686–87. As the recipient of the land, Coleman Farms partnership is also liable under section 550(a) for the value of the loss to the estate as of the date of the transfer.

---

6. Although not a point necessary for proof in a section 549 action, it is noteworthy that both Beshears and Coleman intended this effect, no matter the form of the transaction. Both parties to the contract intended that the value, whether by asset or stock purchase, of the entire corporation would be transferred to Coleman. Coleman stated in his deposition:

> Q. So, you just don't have any recollection one way or the other. Is that your answer?

> A. Well, I know I bought his interest in Al & Beck, and I bought her interest in Al & Beck, and that, I don't know any other way to put it.

Beshears' testimony at the section 341 meeting indicates that he believed Coleman had purchased all of the shares of the corporation. Coleman clarified, in his deposition, that he was concerned that the corporation may have problems of which he was unaware. Accordingly, he chose an asset purchase as the form of the transaction.

See In re Da–Sota Elevator Co., 939 F.2d 654 (8th Cir.1991).

 The appropriate damages are measured by the value lost by the estate on January 14, 1994, when the transfer was made. As discussed above, the value consisted of the land, less the $40,000 paid to Winemiller, and less the value of the mortgage on that date, $507,755.61. This is the value which would have been realized by the estate had the trustee, rather than the Coleman entities, received the estate assets. Accordingly, the trustee is entitled to judgment in the amount of $133,994.39 for the benefit of the estate.

**ORDERED** that judgment shall be entered in favor of the plaintiff and against the defendants in the amount of $133,994.39.

**IT IS SO ORDERED.**