In re Albert **BESHEARS** and Nancy Beshears.

**FIRST STATE BANK OF NEWPORT,** Plaintiff,

v.

Albert Lee **BESHEARS** and Nancy Vietta Beshears, Defendants.

Daniel K. **SCHIEFFLER,** Trustee, Plaintiff,

v.

Albert Lee **BESHEARS** and Nancy Vietta Beshears, Defendants.

**Bankruptcy No. 93–10235 S.** **Adv. Nos. 94–1005, 94–1006.**

United States Bankruptcy Court, E.D. Arkansas, Batesville Division.

March 13, 1996.

Daniel K. Schieffler, Trustee, West Helena, AR.

R. James Lyons, Jonesboro, AR, for Nancy Vietta Beshears.

Robert Meurer, Searcy, AR, for Albert Lee Beshears.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE came before the Court upon the complaints objecting to discharge and dischargeability. The Bank of Newport and the trustee object to the discharge of Albert Beshears under sections 727(a)(5), (3), (2), and (4)(C). The Bank of Newport objects to Nancy Beshears King's [1] discharge under section 727(a)(5), while the trustee objects to King's discharge under sections 727(a)(5) and (3).

This bankruptcy case was filed on December 1, 1993, at the behest of Albert Beshears. Albert Beshears executed most, but not all,[2] of the required signature lines on

---

1. Although the case is a joint one, the petition having been filed by Albert Lee Beshears and Nancy Vietta Beshears, the debtors have divorced since the filing of the petition. In this opinion Albert Beshears will be referred to as "Beshears"; Nancy Beshears will be referred to as "King"; the Bank of Newport will be referred to as "the Bank."

2. At least one of the signatures purporting to be Albert Beshears' was executed by his attorney. This is a violation of Rule 9011 which requires pleadings, *except a list, schedule, or statement, or amendments thereto*, to be signed by an attorney. The petition and schedules are required to be signed, under oath by the debtors themselves. The reasons for the rule that attorneys are not to

the petition and schedules which were filed with the petition, and forged his wife's name where her signature was required. Nancy King claims to have been unaware of the bankruptcy case until approximately the time she received her notice to attend the first meeting of creditors, 11 U.S.C. § 341(a), shortly after the petition was filed[3] *before* the schedules were filed in the case. She was not only aware of the bankruptcy before the schedules were filed, she delivered the information for the schedules to her attorney by facsimile transmission. King attended the section 341 meeting, the continued meeting, and, later, when she acquired separate counsel, filed some amended schedules.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 1334. Moreover, this Court concludes that this is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(1) as exemplified by 28 U.S.C. § 157(b)(2)(J).

### The Statute

■ The discharge in bankruptcy is the foremost remedy to effectuate the "fresh start" which is the goal of bankruptcy relief. *Ray v. Graham (In re Graham)*, 111 B.R. 801, 805 (Bankr.E.D.Ark.1990). Consequently, the Code provisions in any objection to discharge must be strictly construed. *Panuska v. Johnson (In re Johnson)*, 80 B.R. 953 (Bankr.D.Minn.1987), *aff'd*, 101 B.R. 997 (D.Minn.1988), *remanded for further proceedings*, 880 F.2d 78 (8th Cir.1989). The burden is upon the objecting party to prove all elements of the statute setting forth grounds for denying discharge. *Graham*, 111 B.R. at 805.

Section 727(a), provides as follows:

The court shall grant the debtor a discharge, unless,

(2) the debtor, with the intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of petition; or

(B) property of the estate, after the date of the filing of the petition;

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

\* \* \*

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities. \* \* \*

11 U.S.C. § 727(a)(2), (3), (4), (5).

### Counts Common to Both Debtors

The trustee and the bank object to both debtors' discharge under section 727(a)(5), failure to explain loss of assets, and section 727(a)(3), failure to keep adequate records. Each of these grounds have merit as to Beshears such that his discharge will be denied. The Court also denies King's discharge based upon her failure to explain the loss of assets.

1. *Section 727(a)(5), Failure to Explain Loss of Assets.*

■ Under section 727(a)(5), once a creditor has established that debtor owned sub-

---

sign the petition for their clients are illustrated by the problems arising in this case.

**3.** The notice of the first meeting was mailed on December 2, 1993, the day following the filing of the petition. Although the Court believes that the signatures on the original petition are not King's, the Court does not entirely believe the assertion that she was unaware of the bankruptcy filing, or, at least, that she was unaware it was going to be filed since she transferred assets to close family members just prior to the bankruptcy. *See Schieffler v. Beshears*, 182 B.R. 235 (Bankr.E.D.Ark.1995).

stantial and identifiable assets, a debtor must satisfactorily explain loss of such assets. The explanation should be sufficient that the Court does not have to speculate as to what happened to the assets or speculate as to the veracity of the explanation. *Bay State Milling Co. v. Martin (In re Martin )* 145 B.R. 933 (Bankr.N.D.Ill.1992), *appeal dismissed,* 151 B.R. 154 (N.D.Ill.1993). In this instance, the debtors failed to satisfactorily explain a diminution of net worth in excess of $330,000 over a ten month period of time. Section 727(a)(5) does not contain an intent element as part of its proof. Prior financial statements of the debtors were submitted at trail which reflected high values of farm equipment, automobiles and personal property. However, these values are not reflected on the petition. Rather, there is a marked decrease in net worth. For example, the financial statement that Beshears asserts is accurate states a value for farm equipment of $615,000, the petition reflects only $396,500 of such equipment, the testimony at the section 341(a) meeting indicates a value of $160,-000. The financial statement reflects automobiles worth $70,000, the petition, only $39,800. The financial statement reflects personalty with a value of $150,000, the petition, only $23,475. Although the bank had a lien on many of the items of equipment, the location of many of those items has never been revealed.

■ Debtors gave no credible explanation as to the loss of their net worth. Indeed, Beshears' explanations highlight his villainy: some portion of the diminution is due to bribery and fraud. For example, Beshears asserts that the diminution of his assets is due, in part, to the $100,000 he paid to the head of the local drug task force as a bribe. He also asserts the figures on the statements were overstated at the suggestion of a bank officer. The Court does not believe debtor's testimony that the bank placed overvalued figures on the assets in order to lend him money. Beshears essentially advises the Court that his diminution in assets is due to criminal activity and making false statements

to obtain loans. Although these statements assist the Court in assigning the value to which Beshears' testimony is entitled, they do not assist either debtor in the defense of this objection to discharge.

■ Even were the Court to accept Beshears' statements, they do not adequately explain the loss of assets. Vague statements that the equipment was overvalued on the financial statements is insufficient to sustain the debtors' burden. The explanations were unsubstantiated, uncorroborated and undocumented.

■ King asserts several defenses to the objection to discharge: she did not sign the petition, that she had no knowledge of the farm business affairs, and that the property was overvalued on the financial statements. The Court first notes that, although she denies signing the original petition, she yet seeks a discharge in bankruptcy. She ratified the schedules at the section 341(a) meeting and filed amended schedules in October 1994 such that she is a debtor in bankruptcy subject to the provisions of section 727(a)(5).[4] She testified at the section 341(a) meeting that she transmitted information for the schedules to counsel. Amazingly, it was not until after the conclusion of the section 341(a) meetings that she even revealed she had not signed the petition. The claim under section 727(a)(5) for failure to explain the loss of assets is not foreclosed by King's failure to sign the original petition. As a debtor in bankruptcy seeking discharge, she has the obligation to ascertain her assets, including the source of their loss in order to obtain the discharge she seeks.

■ The Court does not find the assertion that King had no knowledge of the business affairs to be credible. The Court does not believe her testimony that she knew nothing of their business affairs. She in fact signed the financial statements at the bank and, it appears, assisted in maintaining the business files. Testimony by the bank indicated that she not only signed the documents, she made a practice of reading documents before sign-

4. Clearly, had the plaintiffs asserted a claim against King under section 727(a)(4)(C), for false oath based upon the contents of the petition, there would exist a problem of proof. *See supra,* note 2.

ing them. It is also noteworthy that King volunteered information at the section 341(a) meeting that indicated she was aware of transactions, location of documents, and the basis for equipment valuation. Indeed, when the trustee requested documents of the debtors, it was King who volunteered their location, offered to retrieve them from their computer, and, to the extent that any were retrieved, in fact located them for the trustee. She also was discovered during the trustee's examination "poking her husband in the leg" when questions were being asked, apparently in an attempt to somehow influence his testimony, or as counsel stated, "just trying to make sure that the answers are correct, and [she] may have more knowledge of certain things than Mr. Beshears does." These actions and statements do not comport with her demeanor or testimony at trial. The Court does not believe her protestations of ignorance and believes her to be sufficiently knowledgeable that she must be held accountable under section 727(a)(5) to explain the disappearance or diminution in value of assets. In any event, her vague, unsubstantiated statements of overvaluation are insufficient to carry her burden on explaining the loss of assets.

### 2. Section 727(a)(3), Failure to Maintain Records.

■■■ Section 727(a)(3), like section 727(a)(5), failure to account for loss of assets, does not contain an intent element as part of its proof. The standard is one of reasonableness. *See generally Graham*, 111 B.R. at 806. Under section 727(a)(3), the debtor is required "to take such steps as ordinary fair dealing and common caution dictate to enable the creditors to learn what he did with his estate." *Koufman v. Sheinwald*, 83 F.2d 977 (1st Cir.1936). *Accord Graham*, 111 B.R. at 806; *Anderson v. Wiess (In re Wiess)*, 132 B.R. 588, 592 (Bankr.E.D.Ark.1991). Once a plaintiff has made a *prima facie* case, the burden shifts to the debtor to justify why the particular record was not maintained. *Wiess*, 132 B.R. at 592.

■■■ In *Wiess*, this Court stated the factors to be analyzed in determining whether discharge should be denied under sections 727(a)(3):

These include debtor's education, the sophistication of the debtor, debtor's business experience, the size and complexity of debtor's business, debtor's personal financial structure, and any special circumstances that may exist.

*Wiess*, 132 B.R. at 592. These factors, analyzed in the context of the facts in this case, indicate that discharge must be denied as to Beshears but *not* as to King. There is no question that records were not turned over to the trustee as required under the Bankruptcy Code. On several occasions, the trustee, in writing, requested particular documents in order to ascertain the extent of debtors' assets and to file required federal tax returns. Most of the requested documents were never produced or not produced until the time of trial.

■■■ The Court does not find that discharge should be denied as to King on this basis because the evidence presented at trial was that King did attempt to turn over the documents to the trustee. In one instance she retrieved documents from debtors' computer and other files and left them with Beshears, but the documents were not turned over the trustee. In another instance, it appears that she delivered documents to their counsel who failed to deliver them to the trustee. While it does not appear that King is blameless with regard to duty to maintain adequate records, her delivery of documents to her husband and attorney, together with the problems in dealing with those two persons are sufficiently great that the Court will not deny her discharge on this basis.

■■■ Conversely, Beshears clearly failed in his duty to maintain adequate records. Documents were specifically left in his custody but not delivered to the trustee. His assertion that he was either incarcerated or a fugitive from justice during the relevant time periods is simply untrue. Records were requested at the section 341(a) meeting, attended by Beshears at a time when he was not incarcerated. He could have and should have obtained the records at that time. At all times he was aware that incarceration was

either possible, or, later, imminent such that he should have been putting his affairs in order. Further, he makes no explanation why he could not retrieve the documents during his lengthy escape from jail. Nothing prevented him from turning over the documents during that time frame. Finally, although there is no intent element to this cause of action, the Beshears' threats in response to the trustee's request for information are an indication that the debtor deliberately withheld documents from the trustee. Indeed, his behavior is consistent with one who conceals or destroys records in order to conceal his criminal activities. No credible justification is offered for the lack of business records such that Beshears' discharge will be denied.

### Counts Relating Solely To Albert Beshears

In addition to the objections to discharge relating to both debtors, the plaintiffs object to Beshears' discharge based upon section 727(a)(2), concealing and transferring property, both pre- and post-petition, and section 727(a)(4)(C), false oath. Each of these grounds have merit.

1. *Section 727(a)(2)(A) Concealing and Transferring Property.*[5] In order to meet their burden under 727(a)(2)(A), plaintiffs must show:

(1) a transfer of property occurred;

(2) the property was property of the debtor;

(3) the transfer occurred within one year of the filing of the petition; and

(4) the debtor had, at the time of the transfer, intent to hinder, delay or defraud a creditor.

*In re Hodge,* 92 B.R. 919 (Bankr.D.Kan. 1988).

The element of intent to deceive involves a two-part inquiry. First, the debtor's actual intent must be found as a matter of fact from the evidence presented. Of course, the objecting party must generally rely on a combination of circumstances which suggest that the debtor harbored the necessary intent. The Court may then draw an inference from this evidence. *In re Van Horne,* 823 F.2d 1285, 1287 (8th Cir.1987). The second prong of the inquiry involves a determination of whether the intent is sufficiently abusive to merit denial of discharge.

The Court has no difficulty in denying Beshears' discharge on these grounds. The evidence was uncontroverted that Beshears transferred assets and concealed their transfer from the trustee. Beshears concealed wells, farm equipment, and a large sum of money from the sale of soybeans from the trustee.[6]

The Court believes that Beshears had the requisite intent with regard to these transfers and concealment. Beshears' assertion that he was unaware that some of these assets constituted property of the estate is simply not credible, particularly in light of his admission on the witness stand that he did know that the wells were property of the estate. His assertion that the trustee never asked for the property is unavailing because it was his duty to disclose all of his assets. The trustee should not be required to search woods, relative's homes, other businesses, or even law enforcement agencies[7] in order to ascertain their existence or location. Debtor's assertion that he was incarcerated at relevant times is also unavailing. Debtor was incarcerated when the items were *found,*

5. King also transferred property prior to the petition under circumstances which indicate an intent to defraud. *See Schieffler v. Beshears,* 182 B.R. 235 (Bankr.E.D.Ark.1995); *supra* note 3. However, this transfer was not pleaded by the plaintiffs in their respective section 727(a) complaints.

6. Of course, these assets relate only the farming operations and personal property. There was also testimony at the section 341(a) meeting and at trial that various drug task forces seized huge amounts of cash in addition to numerous undis-

closed items of farm equipment. It does not appear that all of the cash is listed on the schedules.

7. No one was able to explain how the sheriff's department came into possession of equipment. Various drug task forces were charged with the duty to, and did, seize much of Beshears' assets. Even Beshears' counsel could state only that "somehow" the Clay County Sheriff's Office came into possession of some equipment.

but not at the time they were transferred or at the time they should have been scheduled in December 1993.

▮ It is debtor's duty to disclose all of his assets and transfers. His failure to list so many items indicates an intent to secret them. It appears to the Court that the criminal trial did indeed have much to do with his actions, but not, as he asserts, causing forgetfulness. Rather, it appears that Beshears was indeed "getting his affairs in order" prior to incarceration by liquidating and hiding his assets.

▮ For the same reasons, the Court finds that the objection to discharge based upon post-petition transfers and concealment of assets must be sustained. The only distinction between subparagraphs (A) and (B) of section 727(a)(2) is the time of transfer or concealment of the property. Section 727(a)(2)(B) relates to post-petition transactions. The evidence was uncontroverted that the debtor transferred certain of his rights in Al & Beck, Inc. To Troy Coleman,[8] see *Schieffler v. Coleman*, 196 B.R. 464 (Bankr. E.D.Ark.1996), and received an insurance check in the amount of $12,341, in April 1994. These funds were property of the estate but neither turned over to the trustee nor properly disclosed to him. For all of the reasons recited in the previous section, the Court believes that Beshears retained and concealed the insurance check and transferred his interest in Al & Beck, Inc. with the requisite intent to defraud his creditors. Accordingly, his discharge will be denied.

▮ 2. *Section 727(a)(4)(C), False Oath.* Section 727(a)(4), false oath or account, also contains an intent element for denial of discharge. The Court finds that the plaintiffs have met their burden of proof with respect to this section. The debtor signed a voluntary petition, the schedules of assets and liabilities, and a statement of financial affairs, all under penalties of perjury. These written declarations have the force and effect of oaths. *In re Sanders*, 128 B.R. 963 (Bankr.W.D.La.1991). Moreover, Besh-

ears testified at the creditors meeting, held pursuant to section 341. At that meeting, Beshears was asked specific questions regarding his schedules, at which time he reaffirmed the information contained in the schedules. However, when more closely examined regarding specifics, it was discovered that material omissions in the schedules existed. Thus, not only did he make false statements in the schedules, he falsely testified during the section 341 meeting.

For example, Beshears failed to list on the petition two wells, one grain bin, an executory contract with Rebecca Winemiller, see *Schieffler v. Coleman*, 196 B.R. 464 (Bankr. E.D.Ark.1996), his 1993 crops and proceeds and numerous items of farm equipment. Thus, there are a number of material misstatements on the schedules.

▮ The Court believes that these false statements were knowingly and wilfully made. In order for a false statement under oath to serve as a basis for a denial of discharge, the statement must be known by the debtor to be false and be made wilfully with an intent to defraud. This intent can be established by circumstantial evidence. *In re Sanders*, 128 B.R. 963. Moreover, statements made with reckless indifference to the truth are regarded as intentionally false. *Id.*

In this case, the evidence leads only to the conclusion that Beshears knowingly and wilfully omitted assets with intent to defraud. Beshears admitted during trial that he lied to the trustee at the section 341(a) meeting. After much wrestling with nonresponsive answers as to Beshears' truthfulness, the following colloquy took place:

Q. So you gave Mr. Schieffler less than a completely honest and candid response to his question about that, at the first meeting?

A. You might say that, yes.

Transcript at 166. Transfers were being made to liquidate his assets and were not disclosed until confronted with evidence of the transfers. The failure to report property and the failure to carefully read the typed

---

**8.** Although the parties have not objected to her discharge on this basis, King was fully aware of

and assisted with this transaction.

schedules prior to signing them indicates to the Court the complete disregard for the duty of honesty imposed by the Bankruptcy Code.

 Nor does the Court believe Beshears' assertion that the stress of criminal charges negates his willfulness. Indeed, as described above, the Court believes that his acts were in furtherance of an intent to liquidate his assets and secrete them from all law enforcement agencies as well as the bankruptcy trustee. Beshears had ample time to accurately state the information, despite any purported "stress." Beshears initially filed a skeleton petition with little information on it on December 1, 1993. Beshears was given until December 31, 1993, to file complete schedules, ample time to prepare full and complete schedules. This failure to make proper disclosure despite this lengthy "breathing space" corroborates the other evidence of fraudulent intent to file false schedules. Beshears was given an opportunity to correct any errors at his section 341 and the continued meeting, a period of time that extended for several months. Rather than clarifying such errors at that time, the debtor reaffirmed the incorrect and/or incomplete information in the schedules.

### Conclusion

Neither Beshears nor King are honest debtors entitled to the discharge in Bankruptcy. King is a debtor, subject to all of the requirements of Bankruptcy Code, including the duty to explain a loss of assets which could be used to pay creditors. Beshears is not entitled to a discharge for nearly every ground to which an objection to a discharge can be made.

**ORDERED** that judgment shall be entered in favor of the plaintiffs and the discharge of the debtors Albert Lee Beshears and Nancy Vietta Beshears [King] will be denied.

**IT IS SO ORDERED.**