In re COULTER, Craig A. and Coulter, Carolyn J., Debtors.

STATE BANK & TRUST, N.A. and Steven W. Soulé, Trustee, Plaintiffs,

v.

Craig A. COULTER, Donald L. Worley, and Peoples National Bank of El Reno, Defendants.

Bankruptcy No. 94–02644–R.
Adversary No. 96–0262–R.

United States Bankruptcy Court, N.D. Oklahoma.

Oct. 14, 1997.

---

13. Although the Ninth Circuit uses the phrase fair market value rather than replacement value, the U.S. Supreme Court in *Rash* made it clear that its use of the term replacement value is consistent with the Ninth Circuit's understanding of fair market value. *Rash,* —— U.S. at —— n. 2, 117 S.Ct. at 1884 n. 2.

Andrew R. Turner, Tulsa, OK, for State Bank & Trust, N.A., and Special Counsel for Trustee Steven W. Soulé.

Leonard I. Pataki, Tulsa, OK, for Craig A. Coulter.

Melinda J. Martin, Tulsa, OK, Ralph Harrison, Kingfisher, OK, for Donald L. Worley.

Richard D. Mosier, Los Angeles, CA, for Peoples Nat. Bank.

### MEMORANDUM OPINION

DANA L. RASURE, Chief Judge.

On July 14, 1997, the Amended Complaint of the Chapter 7 Trustee against Defendants Worley and Peoples Bank (the "Trustee's Amended Complaint") came on for Trial. The Trustee, Steven W. Soulé ("Soulé" or the "Trustee"), appeared and was represented by Andrew R. Turner. Melinda J. Martin appeared on behalf of Donald L. Worley

("Worley"). Richard D. Mosier appeared on behalf of Peoples National Bank of El Reno ("Peoples Bank"). The Trustee asserts the following causes of action against Worley and Peoples Bank: (1) avoidance of fraudulent transfers; (2) avoidance of unauthorized post-petition transfers; and (3) unjust enrichment. This Court has jurisdiction over the Trustee's Amended Complaint pursuant to 28 U.S.C. § 1334(a) and 28 U.S.C. §§ 157(a), (b)(2)(A), (E), (H), and (O). The Court, having heard the testimony presented and arguments of counsel, having reviewed the exhibits admitted and the relevant legal authorities, and being fully advised, makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## FINDINGS OF FACTS

On September 7, 1994, Craig A. Coulter ("Coulter") and Carolyn J. Coulter (Coulter and Carolyn J. Coulter sometimes collectively referred to as "Debtors") filed a Petition under Chapter 11 of the United States Bankruptcy Code. Coulter assumed the responsibilities of the debtor-in-possession as provided in Section 1107 of the Bankruptcy Code.

On May 6, 1995, Coulter, while a debtor-in-possession under Chapter 11, opened a checking account at State Bank & Trust, N.A. ("State Bank") in the name of "Craig A. Coulter DBA TRIEXCO," account number 900064153 (the "Account" or "Coulter's Account").[1] The document which Coulter executed to open the Account authorized State Bank to pay checks drawn on the Account and to charge the Account for the amount of such checks. To fund the Account, Coulter transferred $10,000.00 from another account he maintained at State Bank. Coulter did not inform State Bank that he was a debtor-in-possession under Chapter 11 of the United States Bankruptcy Code, nor did he disclose to the Court, the office of the United States Trustee, or any of the creditors that he had opened the Account.

In late February or early March of 1996, Coulter advised Worley that Triexco, Inc. desired to purchase Worley's interest in the Stone Bluff Waterflood Project, an oil and gas project located in Wagoner County, Oklahoma (the "Stone Bluff Waterflood"). Worley testified that the terms of the purchase were that Triexco, Inc. would immediately pay $80,000.00 to Worley and that Triexco, Inc. would take possession of the Stone Bluff Waterflood. The $80,000.00 was to be paid as follows: $50,000.00 to Worley personally and $30,000.00 to Peoples Bank in partial payment of Worley's indebtedness to Peoples Bank which was secured by a mortgage on oil and gas interests (some of which were included in the Stone Bluff Waterflood) ("Worley's Debt"). In addition, within ninety days, Triexco, Inc. was to pay the balance of Worley's Debt and an outstanding bill for chemicals used on the Stone Bluff Waterflood.

On March 6, 1996, Coulter wrote two checks on the Account in partial payment for Worley's interest in the Stone Bluff Waterflood. Check number 1130 was payable to Worley in the amount of $50,000.00 and check number 1129 was payable to Peoples Bank in the amount of $30,000.00 (collectively the "Two Checks"). On March 6, 1996, Coulter's Account had a balance of only $2,139.94.[2] Coulter, however, represented to State Bank that he was expecting a wire transfer of funds from Europe and requested that State Bank pay the Two Checks.

On March 6, 1996, Worley deposited check number 1130 into an account at Kingfisher Bank & Trust Co. ("Kingfisher Bank") belonging to his son, Donald L. Worley, Jr., to pay a debt Worley owed to his son. Later that day, Kingfisher Bank presented check number 1130 to the Federal Reserve Bank for payment. On March 8, 1996, State Bank received check number 1130 and debited Coulter's Account in the amount of $50,000.00. As a result of the $50,000.00 debit,

---

1. The Account was styled to indicate that Coulter was the sole proprietor of an unincorporated business even though Coulter was the sole shareholder of a corporation named "Triexco, Inc." The discrepancy in the form of the entity is not relevant to the analysis in this case.

2. *See Exhibit A* appended to this Memorandum Opinion which reflects the "Daily Balance Summary" as shown on the Statement for Coulter's Account for March 1996.

Coulter's Account had a negative balance of $47,890.06 on March 8, 1996. *See Exhibit A.* Because State Bank anticipated that the promised wire transfer would provide sufficient funds to pay check number 1130, State Bank elected not to dishonor the check by its statutory midnight deadline of March 9, 1996.

On March 7, 1996, Peoples Bank presented check number 1129 to the Federal Reserve Bank for payment. On March 11, 1996, State Bank received check number 1129 and debited Coulter's Account in the amount of $30,000.00. As a result of the $30,000.00 debit, Coulter's Account reflected a negative balance of $77,920.06 on March 11, 1996. *See Exhibit A.* Again, notwithstanding the lack of funds in Coulter's Account, State Bank elected not to dishonor check number 1129 by its statutory midnight deadline of March 12, 1996.

State Bank never received the wire transfer of funds promised by Coulter.

On March 15, 1996, State Bank advised Peoples Bank and Kingfisher Bank by telephone of its intent to dishonor the Two Checks and returned the Two Checks to Peoples Bank and Kingfisher Bank. Also on March 15, 1996, State Bank reversed the debits and credited Coulter's Account in the amount of $80,000.00. *See Exhibit A.* Upon receipt of the Two Checks, Peoples Bank and Kingfisher Bank each filed a "Bank Claim of Late Return" with the Federal Reserve Bank because State Bank had failed to dishonor the checks in a timely manner.

State Bank did not dispute the Bank Claims of Late Return filed by Peoples Bank and Kingfisher Bank. Accordingly, on March 21, 1996, the Federal Reserve Bank returned the Two Checks to State Bank and debited State Bank's account at the Federal Reserve Bank in the total amount of $80,000.00, of which $30,000.00 constituted damages to Peoples Bank on check number 1129 and $50,000.00 constituted damages to Kingfisher Bank on check number 1130. On March 26, 1996, State Bank again debited the amount of the Two Checks against Coulter's Account. *See Exhibit A.* On July 26, 1996, State Bank commenced this adversary proceeding against Coulter, Worley, and Peoples Bank to recover the $80,000.00 paid to Worley and Peoples Bank.

On September 5, 1996, the Debtors' Chapter 11 case was converted to a case under Chapter 7 upon the motion of State Bank, with the acquiescence of the Debtors. On September 13, 1996, Soulé was appointed as the Chapter 7 Trustee. On November 1, 1996, the Trustee was added as an additional plaintiff in this adversary proceeding. On December 18, 1996, Soulé filed the Trustee's Amended Complaint. Also on December 18, 1996, State Bank filed the Amended Complaint of State Bank for Exception to Discharge and Objecting to Discharge against Coulter.

This adversary proceeding was bifurcated for trial, and the Trustee's Amended Complaint was heard on July 14, 1997. State Bank's Amended Complaint against Coulter has been held in abeyance until the Trustee's Amended Complaint against Worley and Peoples Bank is resolved.

## CONCLUSIONS OF LAW

### Avoidance of Post–petition Transfers

In the Trustee's Amended Complaint, Soulé asserts a cause of action against Worley and Peoples Bank for avoidance of post-petition transfers pursuant to Section 549(a)(2)(B) of the United States Bankruptcy Code. Section 549(a) provides as follows:

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2) (A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

■ 11 U.S.C. § 549(a). To prevail on the cause of action under Section 549(a)(2)(B), the Trustee must prove:

1. A transfer of property occurred;

2. The property was property of the estate;

3. The transfer occurred after the commencement of the case; and

4. The transfer was not authorized under the Bankruptcy Code or by the Court.

*In re Beshears (Schieffler v. Coleman )*, 196 B.R. 464, 466 (Bkrtcy.E.D.Ark.1996).

The first element requires a transfer of property. Section 101(54) of the Bankruptcy Code defines "transfer" to mean—

> every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption[.]

11 U.S.C. § 101(54).

■ The difficult threshold question in this case is whether a transfer of property of the estate occurred. Consideration of the various separate transfers of property involving the Two Checks is required to resolve this question.[3]

On March 6, 1996, Coulter delivered the Two Checks to Worley. State Bank paid check number 1130 on March 8, 1996, and debited Coulter's Account in the amount of $50,000.00. State Bank paid check number 1129 on March 11, 1996 and debited Coulter's Account in the amount of $30,000.00. (The $50,000.00 and the $30,000.00 debits by State Bank are hereinafter collectively referred to as the "First Transfer of Property.") On March 15, 1996, when State Bank concluded that it would not be receiving the wire transfer of funds from Europe promised by Coulter, State Bank decided to dishonor the Two Checks. Intending to recover the $80,000.00 by dishonoring the Two Checks, State Bank reversed the debits to Coulter's Account and credited Coulter's Account in the amount of $80,000.00, thus restoring Coulter's Account to its status prior to the First Transfer of Property. At this point, to the extent that a transfer from Coulter's Account occurred, such transfer was reversed.

State Bank attempted to dishonor the Two Checks by returning them to Peoples Bank

and Kingfisher Bank. Peoples Bank and Kingfisher Bank each filed a "Bank Claim of Late Return" with the Federal Reserve Bank contending that State Bank failed to dishonor the checks in a timely fashion. Section 4–302 of Title 12A of the Oklahoma Statutes establishes a payor bank's responsibility for the late return of an item. Section 4–302 provides in part as follows:

> (a) If an item is presented to and received by a payor bank, **the bank is accountable** for the amount of:
>
> (1) a demand item, other than a documentary draft, whether properly payable or not, **if the bank,** in any case in which it is not also the depositary bank, **retains the item beyond midnight of the banking day of receipt without settling for it or,** whether or not it is also the depositary bank, **does not pay or return the item or send notice of dishonor until after its midnight deadline;** or
>
> (2) any other properly payable item unless, within the time allowed for acceptance or payment of that item, the bank either accepts or pays the item or returns it and accompanying documents.

12A O.S.1991 & Supp.1997, § 4–302(a). As a result of State Bank's failure to dishonor the Two Checks prior to the midnight deadline established by Section 4–302, State Bank became independently obligated in the amount of $80,000.00 on the Two Checks.

Accordingly, on March 21, 1996, the Federal Reserve Bank debited State Bank's account in the amount of $30,000.00 for damages to Peoples Bank and $50,000.00 for damages to Kingfisher Bank and returned the Two Checks to State Bank. (The $50,000.00 and the $30,000.00 debits by the Federal Reserve Bank are hereinafter collectively referred to as the "Second Transfer of Property.") The debits against State Bank's

---

**3.** Because the entire transaction occurred while Coulter was a debtor-in-possession in a Chapter 11 case, Coulter's Account was property of the Chapter 11 estate, notwithstanding the fact that Coulter did not designate the Account as a debt-

or-in-possession account. Property acquired post-petition by an individual debtor in Chapter 11 is property of the estate. 11 U.S.C. § 541(a)(7).

account by the Federal Reserve Bank constitute a transfer of property.

On March 26, 1996, after the Federal Reserve Bank debited State Bank's account in the amount of $80,000.00, State Bank charged Coulter's Account $80,000.00. *See Exhibit A.* When State Bank debited Coulter's Account in the amount of $80,000.00 on March 26, 1996, a third transfer of property occurred. (The $80,000.00 debit by State Bank is hereinafter referred to as the "Third Transfer of Property.")

The analysis reveals at least three separate transfers of property in connection with the payment of the Two Checks.

The second requirement of Section 549 is that the property transferred must be property of the estate. Section 541(a)(1) of the Code defines "property of the estate" as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). In addition, Section 541(a)(7) defines "property of the estate" as "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7). The determinative issue is whether any of the three transfers identified were transfers of "property of the estate."

Because "transfer" is broadly defined in Section 101(54) of the Bankruptcy Code to include involuntary dispositions of property, the debits made by State Bank to Coulter's Account on March 6, 1996, and March 11, 1996, which collectively constituted the First Transfer of Property, were transfers of property of Coulter's Chapter 11 estate. The First Transfer of Property, however, was reversed, and the property was transferred back to Coulter's Account.

The Second Transfer of Property occurred when the Federal Reserve Bank debited State Bank's account in the amount of $80,000.00. State Bank was independently obligated to pay $80,000.00 in damages as a result of its failure to timely dishonor the Two Checks. Because the $80,000.00 that

was ultimately paid to Worley and Peoples Bank was property of State Bank and not property of the Debtors' estate, the Trustee's cause of action against Worley and Peoples Bank to avoid unauthorized post-petition transfers from the Debtors' estate must be denied.[4]

### Avoidance of Fraudulent Transfers

■ The Trustee also asserts a cause of action against Worley and Peoples Bank for avoidance of fraudulent transfers pursuant to Section 544(b) of the Bankruptcy Code. Section 544(b) provides:

> The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b). Section 544(b) allows a trustee to avoid a transfer of the debtor's interest in property that is voidable under state law by an actual creditor holding an unsecured claim. Inasmuch as Section 544(b) requires a transfer of "an interest of the debtor in property" and the $80,000.00 that was transferred to Worley and Peoples Bank was property of State Bank in which the Debtors had no interest, the transfer of the $80,000.00 cannot be avoided as a fraudulent transfer.

### Unjust Enrichment

■ Finally, the Trustee asserts a cause of action against Worley and Peoples Bank for unjust enrichment. In order to prevail, the Trustee must prove that Worley and Peoples Bank received money that, "in equity and good conscience, they ought not be allowed to retain." *French Energy, Inc. v. Alexander,* 818 P.2d 1234, 1237 (Okla.1991).

■■ Under Oklahoma law, when a bank fails to give notice of dishonor prior to the expiration of the midnight deadline, the bank has an independent obligation, separate and apart from the instrument, to pay the

---

4. The Third Transfer of Property occurred on March 26, 1996, when State Bank charged Coulter's Account in the amount of $80,000.00. Prior to that charge, the balance in the Account was $2,034.94. State Bank applied that balance toward the $80,000.00 charged against Coulter's Account. Although the $2,034.94 balance in Coulter's Account was property of the estate, the Trustee has not asserted a cause of action against State Bank to recover the funds transferred from Coulter's Account to State Bank or to avoid the $80,000.00 debit.

amount of the check. See 12A O.S.1991 & Supp.1997, § 4–302; *Goodman v. Norman Bank of Commerce,* 565 P.2d 372, 375 (Okla. 1977). State Bank was statutorily obligated to pay the Two Checks. "Equity and good conscience" do not require this Court to allow the Trustee to recover from Worley and Peoples Bank funds that State Bank was obligated by statute to pay to Worley and Peoples Bank. The Trustee's cause of action for unjust enrichment is denied.

**IT IS SO ORDERED.**

### EXHIBIT A

Daily Balance Summary of Coulter's Account
March 1996

| Date | Balance |
|------|---------|
| 2–29 | $ 5,780.37 |
| 3–01 | $ 2,280.37 |
| 3–04 | $ 2,247.82 |
| 3–06 | $ 2,139.94 |
| 3–07 | $ 2,124.94 |
| 3–08 | ($47,890.06) |
| 3–11 | ($77,920.06) |
| 3–13 | ($77,935.06) |
| 3–14 | ($77,965.06) |
| 3–15 | $ 2,034.94 |
| 3–26 | ($77,965.06) |
| 3–31 | ($77,975.06) |